759 P.2d 926

**STATE of Idaho, Plaintiff–Respondent.**

**v.**

**Thomas Edward EUBANK, Defendant–Appellant.**

**No. 16840.**

Court of Appeals of Idaho.

July 26, 1988.

Petition for Review Denied Nov. 7, 1988.

---

**636**

Jeff M. Brudie, Knowlton & Miles, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen. by David R. Minert, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

This case presents issues of sentencing procedure and sentencing discretion. The case comes to us on appeal by Thomas Eubank, who stands convicted of two related felonies—first degree burglary of a home and sexual abuse of a child inside the home. Upon these convictions, and upon a determination that Eubank was a persistent violator under I.C. § 19–2514, the district judge imposed a single sentence for a fixed term of life in prison.

Eubank raises two procedural questions: whether the judge erred in considering a psychological evaluation which had not been specifically ordered, and whether the presentence investigation report erroneously included hearsay information regarding other crimes. In addition, Eubank contends that the fixed life sentence was excessive. For reasons explained below, we reject Eubank's challenges to the sentencing process, but we vacate the fixed life sentence and remand the case.

I

We first discuss the procedural issues, starting with the psychological evaluation. Eubank does not question the district court's power to order an evaluation; rather, he contends that such an order was not entered in this case. Absent the order, he argues, his evaluation was conducted improperly and should not have been incorporated by reference into the presentence report.

Rule 32(d), I.C.R., authorizes a judge to order a psychological evaluation as part of a presentence investigation. The state agrees that the district judge did not enter such an order. However, the state urges—and Eubank concedes—that the district judge did order Eubank transported to a mental health facility "for the purpose of a psychological evaluation." Thus, although the letter of Rule 32(d) was not followed, its substance was observed. The order gave adequate notice to the defense that an evaluation would occur. As the district judge noted, in ruling on Eubank's motion

to strike the evaluation, "it would be difficult to order transportation to a place for a psychological report and not realize what was going to happen...." We hold that the judge did not err in considering the psychological evaluation when determining Eubank's sentence.

■ Eubank next attacks the presentence report because it included hearsay information about other, uncharged crimes. It is well settled that hearsay information may be set forth in a presentence report, so long as the defendant is afforded an opportunity to present favorable evidence and to explain or rebut the adverse information. I.C.R. 32(e); *State v. Mason*, 107 Idaho 706, 692 P.2d 350 (1984). However, hearsay information must be disregarded if there is no reasonable basis to deem it reliable, as where the information is simply conjecture. *State v. Sensenig*, 110 Idaho 83, 714 P.2d 52 (Ct.App.1985).

■ Here, the information was not mere conjecture. It came from victims of other sexual misconduct by Eubank. Those individuals later appeared at the sentencing hearing and were subjected to cross-examination by Eubank's counsel. Eubank also testified, attempting to rebut the witnesses' allegations. He was afforded a full opportunity to confront and to disprove or explain the adverse information contained in the presentence report. The information furnished by the victims to the presentence investigator, and supplemented in their testimony, was found to be reliable. Moreover, it was probative in establishing Eubank's character—an important element of Idaho's individualized sentencing system. *See State v. Shideler*, 103 Idaho 593, 651 P.2d 527 (1982). Accordingly, we find no error in considering the uncharged crimes disclosed by the presentence report.

## II

Next we must decide whether a fixed life sentence is excessive under the circumstances of this case. A fixed life sentence is the harshest penalty available under Idaho law, short of a death sentence. It precludes any good time credit or parole. *See* I.C. § 20–101A and former I.C.

§ 19–2513A. Absent an executive commutation (an event which the judiciary can neither predict nor assume), a defendant given a fixed life sentence will be imprisoned until he dies.

With only two exceptions, this Court's review of fixed life sentences has been limited to first degree murder cases. Both exceptions involved severe bodily injury to the victim. In *State v. Storey*, 109 Idaho 993, 712 P.2d 694 (Ct.App.1985), a robbery was accompanied by several gunshot wounds to the victim's head. The victim miraculously survived. In *State v. Martinez*, 109 Idaho 61, 704 P.2d 965 (Ct.App. 1985), *overruled in part*, 111 Idaho 281, 723 P.2d 825 (1986), two defendants received consecutive fixed sentences of thirty years for rape, thirty years for lewd conduct and fifteen years for aggravated battery—all upon the same victim. Together these fixed terms were tantamount to fixed life sentences. The defendants had inflicted such extreme physical trauma upon the victim that surgery was required, and her prospects for a full recovery were doubtful.

The instant case involved no such extreme injury. Eubank made a nonviolent but unauthorized entry into the home of a female acquaintance with whom he had engaged in social drinking earlier that evening. Once inside, he found the acquaintance's younger sister asleep on a couch. He attempted to kiss her, and he reached under her blouse. She awakened and ran to a bathroom, locking herself inside. Eubank apparently made no effort to enter the bathroom. She told him to leave and, after some delay, he did.

These facts portray wrongful and frightening conduct, but they do not fit the pattern of cases in which fixed life sentences have been upheld. In deciding whether to depart from that pattern in this case, we must consider the function of a fixed life sentence in our criminal justice system. The general purposes of prison sentences are well known. In *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we said that our Supreme Court has articulated four objectives of criminal punishment: protection of society, deterrence, re-

habilitation and retribution. We also noted that the American Bar Association, in its Standards Relating to Sentencing Alternatives and Procedures § 2.2 (Approved Draft 1968), has enunciated the following general principle: "The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with [sentencing objectives]...."

Our opinion in *Toohill* synthesized the ABA principle and the sentencing objectives articulated by our Supreme Court, as follows:

> [A] term of confinement is reasonable to the extent that it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.

103 Idaho at 568, 650 P.2d at 710. We also observed that a judge has discretionary power to determine the length of confinement required to satisfy these objectives:

> Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the [applicable] criteria.

103 Idaho at 568, 650 P.2d at 710. Nonetheless, it remains our responsibility at the appellate level to review the facts independently, focusing upon the nature of the offense and upon the character of the offender. *E.g., State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

Under these standards, a fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society. Unfortunately, in making these determinations, a judge has complete information only in regard to retribution and deterrence, which are based on the nature of the offense. The character of the offender is not completely known because it may evolve over time. The judge must attempt to predict the defendant's future response to rehabilitative programs and the degree of risk he might pose to society if eventually released.

The difficulty of making such a prediction has been recognized in Idaho's Unified Sentencing Act (effective February 1, 1987). *See* I.C. § 19–2513. This new law authorizes (indeed, directs) a sentencing judge to prescribe a minimum period of confinement, based primarily on the nature of the offense, to be followed by an indeterminate period during which correctional authorities can decide, upon fuller information, whether a prisoner's rehabilitative progress allows a safe return to society. Although the Unified Sentencing Act was not in effect when Eubank committed the crimes at issue here, the district judge specifically mentioned it. He expressed a wish that he could "set both a minimum time of incarceration and then an indeterminate time to follow," as authorized by the new law. We interpret the judge's remarks to indicate that he doubted the appropriateness of a fixed life sentence. However, he evidently felt that such a sentence was preferable under existing law to an indeterminate life sentence, which would allow parole in ten years. The judge chose a fixed life term because he could not say, upon information then available to him, whether Eubank might ever be returned safely to society.

In our view, a fixed life sentence should not be regarded as a judicial hedge against uncertainty. To the contrary, a fixed life term, with its rigid preclusion of parole or good time, should be regarded as a sentence requiring a high degree of certainty —certainty that the nature of the crime demands incarceration until the perpetrator dies in prison, or certainty that the perpetrator never, at any time in his life, could be safely released. Here, as we have not-

ed, the conduct for which Eubank was convicted does not resemble egregious crimes in other cases where fixed life sentences have been affirmed. The question, then, is whether a fixed life sentence could be upheld upon a finding, made with a high degree of certainty, that Eubank's character never would allow him to be released, even on parole, in the future.

The record pertaining to Eubank's character discloses that he is one of seven children. He left home at age fifteen due to friction with his parents. Other than this event, the presentence report does not disclose a history of significant family problems such as physical abuse or alcoholism. Eubank dropped out of high school at age sixteen and subsequently enlisted in the National Guard. He served approximately two years before going AWOL and receiving a dishonorable discharge. Back in civilian life, Eubank worked at various manual labor jobs, none for any substantial length of time. At the time of the instant offenses, Eubank was thirty-four years old, single and without children.

Eubank's prior criminal record was lengthy. However, the vast bulk of the charges consisted of traffic offenses or infractions—approximately thirty spread over a period of nearly twenty years. Eubank also had several nontraffic misdemeanors, all alcohol-related. In addition, Eubank had been convicted of two prior felonies: assault with a deadly weapon and assault with intent to commit rape. The circumstances surrounding these offenses are not set forth in the record. Finally, as we have mentioned, there was hearsay information, supplemented by testimony at the sentencing hearing, that Eubank had molested two other teenage girls. The trial judge noted that these uncharged crimes demonstrated a proclivity to engage in sexual misconduct with girls in a certain age group.

The psychologist who evaluated Eubank found that he suffered from a character disorder, exacerbated by alcohol abuse. He noted that Eubank's denial of allegations against him would make rehabilitation problematic. He deemed Eubank to be at high risk of reoffending. However, the psychologist did not find that Eubank was beyond rehabilitation. Rather, he stated that effective treatment was not then available in northern Idaho. He recommended lengthy incarceration as the most viable alternative.

Upon this record a judge would be unable to find, with a high degree of certainty, that Eubank never could be safely returned to society on parole. Indeed, the district judge did not make such a finding. Instead, he made a cautious observation that "rehabilitation is always a possibility but it's—it certainly is a very slight probability in this case."

We commend the judge for his conscientious approach, but we hold that the fixed life sentence was inappropriate. We vacate the sentencing portion of the judgment and direct the district court on remand to enter a modified judgment. The judgment should include separate sentences for the two offenses of which Eubank was convicted in this case. As we have noted, Eubank was found to be a persistent violator because the instant offenses were preceded by two other, unrelated felony convictions. Eubank's status as a persistent violator was set forth in the same amended information—and was adjudicated in the same judgment—as the instant offenses. Accordingly, the judge may treat Eubank as a persistent violator in fashioning the sentence on each of these offenses.

The court on remand may modify the judgment from one imposing a single fixed life sentence to one imposing separate sentences of indeterminate life. Alternatively, the judge may impose sentences for terms less than life, making the terms either fixed or indeterminate. The court also may direct the sentences to be served concurrently or consecutively. By carefully structuring the sentences, the court can ensure that correctional authorities will confine Eubank for a lengthy period, without rigidly forcing them to hold him in prison long after rehabilitative progress or the biological effects of increasing age may have ameliorated the risk of recidivism.

The judgment is vacated as to the sentence imposed. The case is remanded for resentencing consistent with this opinion.

WALTERS, C.J., and SWANSTROM, J., concur.