854 P.2d 265

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Daniel D. CAMPBELL, Defendant–Appellant.**

No. 19715.

Court of Appeals of Idaho.

May 3, 1993.

Petition for Review Denied June 30, 1993.

**924**

Allen R. Derr & Associates, Frederick J. Frahm, Boise, for defendant-appellant.

Larry EchoHawk, Atty. Gen., L. Lamont Anderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Daniel D. Campbell appeals from the judgments of conviction sentencing him to three concurrent life sentences, with fifteen years' minimum confinement, after he pled guilty to two counts of rape, I.C. § 18–6101(1) (sexual intercourse with a female under the age of eighteen); and one count of lewd conduct with a minor under the age of sixteen, I.C. § 18–1508. Campbell contends that the district court abused its sentencing discretion (1) by denying, in part, Campbell's motion to strike portions of his presentence report; (2) by improperly weighing other information in the record, including his psychological report and the victim impact statements; and (3) by imposing sentences that were excessive under the facts. For the reasons explained below, we affirm.

## I.

### Facts and Procedural Background

ₒAt the time of the events giving rise to the instant convictions, Campbell was a science teacher and athletic coach for the Meridian School District. In April, 1991, a grand jury indicted Campbell for one count of lewd conduct committed upon a fourteen-year old girl, and one count of rape involving a seventeen-year old girl. As more allegations arose, other indictments were filed charging Campbell with two counts of lewd conduct with a third girl, one count of sexual abuse of a minor involving a fourth girl, and one count each of lewd conduct and rape involving a fifth girl. All of these girls had been students at the middle school where Campbell had taught. Pursuant to a plea bargain, Campbell pled guilty to the lewd conduct and rape charges contained in the first indictment. Later, Campbell entered an *Alford*[1] plea of guilty to the rape of the fifth girl in exchange for the dismissal of the remaining four counts, and the state's promise to forgo filing additional charges in Boise County.[2] The court accepted Campbell's

---

1. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

2. These charges, if brought, would have alleged similar acts against the same victims, although committed in a different county.

pleas and dismissed the remaining charges. The cases were consolidated for sentencing.

The district court ordered a presentence investigation report (PSI) and scheduled a date for sentencing. After receiving and reviewing the PSI, which included the psychological report from Dr. Stoner, Campbell submitted additional information and a written "response" to the PSI, which the presentence investigator attached to her report. Campbell also moved for an order to strike certain portions of the PSI. Specifically, he objected to the PSI's inclusion of rumors and reports from anonymous informants, statements from his ex-fiance, the conclusions of the investigating officer, Detective English, the victim impact statements, and statements relating to the dismissed counts or uncharged misconduct. Campbell also asked the court to order that the PSI be re-written to incorporate the supplemental information he had provided, instead of merely attaching it to the end of the report. The court held a hearing on Campbell's motion and assured counsel that it would go through the PSI and consider all of Campbell's objections. The court later granted the motion in part, and in part denied it. During the sentencing hearing, which lasted three days, counsel for Campbell called sixteen witnesses on his behalf, and the prosecutor called six on behalf of the state. After considering all the information before it, including the approximately one thousand pages contained in the PSI, the testimony presented at the hearing, and the recommendations of counsel, the district judge imposed a life sentence, with fifteen years' fixed, for each of Campbell's three convictions. The court ordered that the sentences be served concurrently. Campbell timely filed this appeal from the judgments of conviction.

## II.

### Issues and Standard of Review

On appeal, Campbell raises the following issues:

(A) whether the district court erred when it denied, in part, Campbell's motion to strike and to re-write the presentence investigation report;

(B) whether the district court erred by failing to properly weigh the evidence presented to it; and

(C) whether the district court imposed sentences which were excessive in view of the facts presented.

Each of these issues are reviewed on appeal under an abuse of discretion standard. *See* I.C. § 19–2521; I.C.R. 32. Under that standard, the appellate court conducts a multi-tiered inquiry. We examine whether the lower court rightly perceived the issue as one of discretion; whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and whether the court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989). Absent a showing that the district court abused its discretion, we will not disturb the challenged decision on appeal.

## III.

### A. Challenges to the PSI

Campbell first challenges the adequacy of the PSI, an issue raised before the lower court and properly preserved for appeal. We note that when Campbell initially raised the issue below, the district court assured both parties that it would review the PSI giving careful consideration to Campbell's objections. At the sentencing hearing, the court expressly stated that it had disregarded and attempted to strike from the presentence report all anonymous information; all information based on double hearsay; all advocacy statements except those of the victims and their families; and those statements from counselors which went beyond diagnosing the conditions of the victims. The record shows that the court in fact deleted much of this information by drawing through the text with a felt-tip pen. Campbell asserts, however, that the district court did not go far enough. Specifically, Campbell contends that the court erred (1) by failing to strike the conclusion of Detective English that Campbell had used his "magnetism" and charisma for

corrupt purposes, and (2) by refusing to delete the statements indicating he had sexual relationships with adolescents other than those identified in the charges to which he pled guilty. Campbell argues that such information either consisted of mere speculation and conjecture or was shown to be unreliable, and that the district court erroneously relied upon it when imposing sentence. We disagree.

Idaho Criminal Rule 32 sets forth the standards and procedures for presentence investigation reports. The rule provides, in part:

> In the trial judge's discretion, the judge may consider material contained in the presentence report which would have been inadmissible under the rules of evidence applicable at trial. However, while not all information in a presentence report need be in the form of sworn testimony and be admissible in trial, conjecture and speculation should not be included in the presentence report.

I.C.R. 32(e). Rule 32(g) further provides that:

> the defendant and his attorney shall be given a full opportunity to examine the presentence investigation report so that, if the defendant desires, he may explain and defend adverse matters therein. The defendant shall be afforded a full opportunity to present favorable evidence in his behalf during the proceeding involving the determination of sentence.

▪ Under these rules, a sentencing court is free to consider the results of a presentence investigation if the reliability of the information contained in the report is insured by the defendant's opportunity to present favorable evidence, to examine all the materials contained in the report, and to explain or rebut adverse evidence. *See Cunningham v. State*, 117 Idaho 428, 788 P.2d 243 (Ct.App.1990). The court may consider hearsay evidence, evidence of previously dismissed charges against the defendant, or evidence of charges which have not yet been proved, so long as the defendant has the opportunity to object to, or to rebut, the evidence of his alleged misconduct. *See* I.C.R. 32(e)(1), (2); *State v. Ma-*

*son*, 107 Idaho 706, 692 P.2d 350 (1984); *State v. Ott*, 102 Idaho 169, 627 P.2d 798 (1981); *State v. Steward*, 122 Idaho 284, 833 P.2d 917 (Ct.App.1992); *State v. Eubank*, 114 Idaho 635, 759 P.2d 926 (Ct.App. 1988). It is error, however, for the court to consider such information if there is no reasonable basis to deem it reliable, as where the information is simply conjecture or speculation. *State v. Mauro*, 121 Idaho 178, 824 P.2d 109 (1991); *Eubank*, 114 Idaho at 637, 759 P.2d at 928; *State v. Sensenig*, 110 Idaho 83, 714 P.2d 52 (Ct.App.1985). On appeal, we presume that a sentencing court is able to ascertain the relevancy and reliability of the broad range of information and material which is presented to it during the sentencing process, to disregard the irrelevant and unreliable evidence, and to properly weigh the remaining evidence which may be in conflict. *State v. Pierce*, 100 Idaho 57, 593 P.2d 392 (1979); *State v. Bundy*, 122 Idaho 111, 831 P.2d 953 (Ct. App.1992); *State v. Holmes*, 104 Idaho 312, 658 P.2d 983 (Ct.App.1983).

▪ In this case, Campbell was given ample opportunity to examine all the materials contained in his presentence report; in fact he was granted an additional four weeks to prepare his response. Campbell also availed himself of numerous opportunities to present evidence on his behalf and to explain and rebut the evidence against him. He first submitted information to the presentence investigator at his initial interview and later by submitting extensive written information, which the investigator appended to her report. Later, by way of his motion to strike and the hearing held on that motion, Campbell attacked specific portions of the presentence report on foundational grounds. He also submitted extensive information to rebut adverse allegations and conclusions contained in the report. Campbell again reiterated his positions in his sentencing memorandum. Finally, during the three-day sentencing hearing, he produced sixteen witnesses who testified on his behalf, and he had the opportunity to cross-examine the six witnesses who testified against him. Based upon this record, we conclude that Camp-

bell was afforded a full and fair opportunity to examine the report and to explain and rebut adverse information, as required by I.C.R. 32. Campbell's argument to the contrary therefore is rejected.

■ We further conclude that the specific statements objected to by Campbell, *i.e.,* (1) Detective English's statement that Campbell had used his charisma for corrupt purposes, and (2) the statements concerning dismissed charges and uncharged misconduct, did not constitute mere conjecture or speculation, and could properly be considered by the court. The record reflects that Detective English was one of the officers assigned to investigate the allegations of Campbell's sexual misconduct. In the course of his investigation, English interviewed the victims, their families, many of Campbell's students and former students, including other alleged victims, and other individuals who had observed the interaction between Campbell and his students. As his reports indicate, Detective English's conclusions and opinions were not mere speculation but were based upon the information he gained from these interviews. Nor did the court err in refusing to strike statements relating to uncharged sexual misconduct. These statements were made to investigators by the alleged victims themselves or by witnesses who had directly observed Campbell's actions. They were not conjecture or speculation. *See State v. Eubank,* 114 Idaho 635, 759 P.2d 926 (Ct. App.1988). As noted above, Campbell was presented a full opportunity to confront and disprove the truthfulness of these statements. We conclude, therefore, that the sentencing court properly could find that the statements provided reliable information which was probative, both of Campbell's character and of the seriousness of his offenses. *See id.,* 114 Idaho at 637, 759 P.2d at 928.

Campbell also complains about the format of the presentence report. He argues that the supplemental written information he provided to the presentence investigator should not have been appended to the report, but incorporated by the investigator into the main body of the report. However-

er, because Campbell has not supported his contention with either law or argument, we will not consider it on appeal. *See* I.A.R. 35(a)(6); *Murray v. Famers Ins. Co.,* 118 Idaho 224, 796 P.2d 101 (1990); *Matter of Estate of Logan,* 120 Idaho 226, 815 P.2d 35 (Ct.App.1991); *Price v. Aztec Ltd.,* 108 Idaho 674, 701 P.2d 294 (Ct.App.1984).

### B. Challenges to the Court's Weighing of Information.

■ We next address Campbell's assertions that the district court improperly weighed the evidence before it. First, Campbell avers that the court erred by making a specific finding that he "had been sexually involved" with the young girl identified in his third conviction. He argues that the court erred by finding that he had sexual intercourse with the girl because the rape conviction was entered upon an *Alford* plea—a plea in which he denied actual guilt but pled guilty to take advantage of a plea bargain with the state. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). We note, however, that the record from Campbell's plea hearing shows that the state represented that it had evidence to show that Campbell drove the fifteen-year old girl to his home and had sexual intercourse with her. The PSI contains corroborating statements from the victim herself. Additionally, the victim testified to these facts at the sentencing hearing and was cross-examined by Campbell's attorney. Although Campbell continues to deny he was sexually involved with this victim, the issue was one of credibility to be determined by the district court. *See State v. Crea,* 119 Idaho 352, 806 P.2d 445 (1991). From the evidence before it, including the fact that Campbell pled guilty, the district court properly could adjudge the victim to be a credible witness and find that the sexual involvement in fact had occurred. Accordingly, we find no error.

■ Campbell also avers that the court failed to give "due weight" to the psychological report which contained an evaluation of Campbell's rehabilitative potential. As noted by Campbell, that report ultimate-

ly concluded he would be a good candidate for treatment in a structured program for sex offenders. Campbell argues that the district court's imposition of a lengthy period of incarceration, which does not allow for such rehabilitative treatment, demonstrates that the court ignored the psychological report and was erroneous. We disagree. The mere fact that the court chose to impose a sentence of imprisonment does not indicate that it failed to consider the report. Although the district judge did not specifically address the psychological report at the sentencing hearing, he stated that he had read the report. The court also heard Dr. Stoner testify at length regarding the contents of the report and his conclusions. As noted below, the transcript from the sentencing hearing clearly reflects that the court examined both the positive and negative aspects of imposing a sentence which would allow for rehabilitative treatment. The court ultimately concluded that society would best be served by sentencing Campbell to a lengthy term of incarceration. Campbell's assertion that the court ignored the psychological report simply is not supported by the record.

Campbell further asserts that the sentencing court erred by overemphasizing the victim impact statements, which advocated lengthy sentences of incarceration. We note that the sentencing court may, in non-capital cases, consider victim impact statements and statements from victims requesting a particular sentence, provided, however, that the court does not give undue weight to the statement by shifting its emphasis from the crime and the criminal to the "worth" of the victim. *State v. Searcy*, 118 Idaho 632, 798 P.2d 914 (1990); *State v. Grove*, 120 Idaho 950, 821 P.2d 1005 (Ct.App.1991); *State v. Chapman*, 120 Idaho 466, 816 P.2d 1023 (Ct.App.1991). The record indicates that the court did consider the written and oral testimony from the three victims and their families when it sentenced Campbell. As the court's comments at sentencing demonstrate, the court properly took these statements into account when it evaluated the seriousness of Campbell's offense and the need for retribution. Campbell has failed to point to

anything in the record to show that the court placed emphasis upon the worth of his victims or shifted its attention away from the seriousness of the crime. Therefore, his assertion that the court unduly emphasized the impact statements is rejected.

## C. Excessiveness of Sentence.

Finally, Campbell contends that his sentences are excessive under the circumstances of his case. Each of the crimes for which Campbell was convicted carries a maximum possible sentence of life imprisonment. *See* I.C. § 18–6104 *and* I.C. § 18–1508. Because Campbell's three concurrent life sentences are within the statutory limit, we will not disturb them on appeal absent a showing that court abused its sentencing discretion. *State v. Hooper*, 119 Idaho 606, 809 P.2d 467 (1991); *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989). A sentence may represent such an abuse if it is demonstrated to be unreasonable under the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (Ct.App. 1982); *State v. Browning*, 121 Idaho 239, 824 P.2d 170 (Ct.App.1992). In determining the reasonableness of the sentence, we look to the probable length of confinement. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). In Campbell's case, this is fifteen years, the minimum period of confinement imposed by the sentencing judge. I.C. § 19–5213; *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991); *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). A sentence is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *Toohill*, 103 Idaho at 568, 650 P.2d at 710. To prevail on appeal, the appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria. *Id.* When reviewing the reasonableness of a sentence on appeal, we conduct an independent examination of the record, focusing upon the

nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

The record in this case, consisting of a voluminous presentence report and hundreds of pages of testimony, reveals the following. Campbell, a forty-one year old school teacher, pled guilty to having sexual intercourse with three female students. The first incident occurred in May 1988, when Campbell invited the victim to go home with him on the pretext that other students would be gathering there. Campbell had sex with the girl, who was fifteen at the time. As a result of this encounter, the girl became pregnant and later underwent an abortion. Very shortly thereafter, around October, 1988, Campbell became sexually involved with his next victim, a seventeen-year old girl whom he had taught for several years and who had been his teaching assistant. He continued this relationship for nearly a year, and provided her with the keys to his house. The relationship came to an end when the victim discovered she was pregnant.[3] Campbell persuaded her to have an abortion and gave her money to pay for one. When the pregnancy was terminated, he asked that she return his house keys. In the meantime, Campbell had begun another sexual relationship with a third victim, a fourteen-year old student. This girl had been a student of Campbell's for two years and she also, had worked in his classroom as a teacher's assistant. Notwithstanding a formal admonition from the girl's parents, Campbell continued his relationship with her. This relationship, too, led to pregnancy. This time, Campbell posed as the girl's father, signed the parental notification form for an abortion, and paid for her to have an abortion. The record also contains numerous letters and extensive testimony from each of these three victims, their family members and counselors, describing the emotional devastation caused by Campbell's conduct.

With respect to Campbell's character, the record indicates that he had earned his bachelor's and his master's degrees, and that he had schooling in guidance counseling. It also shows that Campbell was a dedicated science teacher and athletic coach at the middle school where he taught. He was admired and trusted by many of his students. Some of these students, mostly female, frequently came to his classroom to talk to him during breaks, lunch hours, and after school. As one student explained, he befriended his students at a time when it was important to them to be understood by adults, and they confided in him. However, the reports indicate that Campbell usually turned these conversations toward the subject of sex, making sexual jokes and inquiring whether the girls were sexually active with their boyfriends. One girl reported that Campbell often gave her backrubs, placing his hands under her clothing, while telling her that as an older man he would be a better lover and be more gentle. He also invited students to visit his home and provided them alcohol. He admits that on one occasion in 1984 he invited three female students into his home, gave them liquor to drink and then engaged them in a game of strip poker. Although not admitted by Campbell, one of these girls reported that he later took her into his bedroom and had sex with her. Campbell's former fiance also testified that once in 1984, while she was residing with Campbell, she came home to find him in bed with a juvenile.

At the sentencing hearing, the district court gave a detailed explanation of the sentences it chose to impose in Campbell's case:

> Mr. Campbell, you're a person of great personal charisma. You have the capacity to inspire and you have the capacity to teach, and you've done that. In many aspects of your life you have been a strong contributor to society, there's no question about that....
>
> You also have the capacity to use that personal magnetism, that charisma for corrupt purposes. You've done that. In the cases before me you've perverted a gift and you've used that charisma for illegal and immoral purposes....

---

**3.** This victim had turned eighteen by the time she became pregnant.

[O]ut of your conduct there will be a lot of innocent people hurt. Suspicion will fall on teachers and on others in authority whose conduct is well meant and honorable. The dealing with adolescents is one of the most challenging and one of the most venerated roles in our society. There are tremendously giving people in the teaching profession, and in other occupations, who take nothing from children, they only give, and those people will be hurt. There will be people who will back away and who will not have the beneficial type of contact that they should have because of concern that suspicions will fall upon them, and there will be people who will be suspicious, parents, adolescents, who will be suspicious and believe that, perhaps, there is a corrupt motive with others when no corrupt motive is present. There is an impact that a serious harm comes to a community when events of this nature occur. . . .

Those are general considerations. There are basic factors to be considered in determining a final sentence. [To] summarize: rehabilitation, deterrence, protection of society, and retribution.

Concerning rehabilitation. There's a potential for rehabilitation in this case. There are positive and negative elements in this regard. The positive side is that you're intelligent, you're employable, and you're a highly motivated person. You've exhibited some remorse. I'm satisfied, however, that you have not accepted full responsibility for your conduct.

There's a negative side. You've proceeded in the face of incredible warnings. The pregnancy of an adolescent should chill any desire to have further relations with an adolescent. The fact of an abortion should have deterred. One of the most compelling facts of this, in this case, arises from the fact of confrontation with a parent who said, "Stay away from my child." That should have come home like thunder, and you should have backed away.

The number of relations and frequency of relations indicate a willingness to proceed. Warnings by others to keep proper bounds that were ignored also weigh against rehabilitation. There is, in this case, a significant potential for rehabilitation, there is also a significant potential for reoffense.

The next feature that I've weighed and considered is that of deterrence, individual deterrence and general deterrence. So far as individual deterrence is concerned, obviously a significant sentence can deter you by incapacitation and by raising the stakes so high that further involvement carries too great a risk and too great a weight.

General deterrence. Unlike what I would say in most cases that I deal with in criminal sentencings, I can say in this case that I believe a sentence is likely to deter others in positions of authority who may abuse adolescents. The lines have always been clear, adults do not have sexual contact with adolescents. That bright line rule has its application most clearly in positions of authority and trust. Positions that are admired.

A sentence in this case can write that message in capital letters. Some marginal people with intellect and with a self—a sense of self-preservation can listen and can learn from a sentence. Some marginal people will not breach the professional standard. They will avoid the temptation by never walking too close to the line.

Third factor to consider is protection of society. Society, adolescents in particular, do need protection from you. You are presently a threat for future harm if not restrained. As I've indicated, there's a potential for rehabilitation. There is also a potential for reoffense. From the extensive review that I've made of this record, which consists of, as I say, probably a thousand pages of material submitted by the Presentence and by Counsel, and the testimony, I do not believe that you've accepted full responsibility for your conduct. I believe that you've minimized, and I believe that you've sought to cast relations of lust as relations of love. The sentence for protection of society is in order.

Retribution. When we talk of retribution we talk of a measure of the crime....

The suppression of private vengeance is a legitimate role of sentencing. Under the concept of retribution, a sentence must be significant enough that those who have been harmed, the victims and their families, can recognize that punishment has been imposed. It may not be the same sentence that those who have been harmed would impose, but it must be enough that responsible people can say that enough has been done. They must be able to say that out of this there will not be private vengeance. We will not have these matters settled in the streets or privately. They will be settled within a system, and the sentence must accomplish that.

It is clear from this record that the district court took into account the appropriate sentencing criteria, and that it applied those criteria to the evidence before it, having regard for the serious nature of the offenses and for Campbell's character. Although the sentences are lengthy, Campbell has not shown them to be unreasonable under the facts and circumstances of his case. Therefore, we will not disturb those sentences on appeal.

### Conclusion

The judgments of conviction for two counts of rape and one count of lewd conduct with a minor, including the imposition of three concurrent life sentences with a mandatory period of fifteen years' incarceration, are affirmed.

SWANSTROM, J., and SILAK, Acting Judge, concur.