857 P.2d 658

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Richard PEDERSON, Defendant–Appellant.**

**No. 20015.**

Court of Appeals of Idaho.

Aug. 12, 1993.

Van G. Bishop, Nampa, for appellant.

Hon. Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

This is a sentence review. The appellant, Richard Pederson, age 22, pled guilty to first degree murder for the killing of his six-week-old son. I.C. §§ 18–4001; 18–4003(d) (homicide committed while perpetrating aggravated battery on child under twelve years of age). The district court imposed a life sentence in the custody of the Board of Correction, I.C. § 18–4004, and ordered that the entire sentence be served as a minimum term of confinement, i.e., that Pederson serve all of the life sentence in confinement without parole or discharge. I.C. § 19–2513. On appeal, Pederson contends that the district court abused its discretion by requiring the entire sentence to be served in confinement without the possibility of parole. He also argues that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. We hold that the court did not abuse its sentencing discretion and that the sentence did not violate Pederson's right to be free from cruel and unusual punishment.

## SENTENCING DISCRETION

As punishment upon a conviction for first degree murder, the accused may be sentenced to death or to a life term in the custody of the Board of Correction. I.C. § 18–4004; *State v. Wilson,* 107 Idaho 506, 690 P.2d 1338 (1984). Here, the court chose not to impose the death penalty after considering aggravating and mitigating factors relative to arriving at that decision. I.C. § 19–2515. The court chose, instead, to impose a life sentence and to order that the sentence be fixed or determinate, i.e., without the possibility of parole. In reaching this conclusion, the court articulated its reasons, finding that it would be unjust and inappropriate to impose capital punishment, but determining that the primary objective of the protection of the public and the secondary goals of deterrence of the defendant and of others, and of rehabilitation and punishment, best would be served by ordering the defendant confined for the remainder of his life. The court's findings in this regard outline the circumstances of the crime and the pertinent character of the defendant:

The victim in this case was a totally helpless six-week-old baby that absolutely had no ability to resist or defend. The defendant claims to have only struck the child once. There is no direct proof which contradicts that claim. However, the medical records indicate that both sides of the baby's skull were shattered with fractures. Either the baby was struck with more than one blow, or the baby was struck with a single blow with such force that it somehow caused the fracturing of both sides of the skull.

.     .     .     .     .

In this case, the defendant has a fairly extensive criminal history for his age. He was on probation as a juvenile. His juvenile officer remembers the defendant as one of the worst cases she had dealt with. The defendant has been convicted on three different occasions of felony crimes prior to his pleading guilty to murder in the first degree. At least two of those prior crimes were committed while he was on adult probation. He was committed to the Board of Corrections for placement in the [retained jurisdiction] program at Cottonwood. This killing occurred just a few weeks after his release from confinement.

The defendant also has a history of physical abuse to others. The presentence report clearly indicates that the defendant has a volatile temper and when enraged will strike out at others—particularly women. In the past, according to the presentence report, the defendant has physically intimidated his mother, his sister, and his girlfriend Tammy Roberts [the mother of the victim]. Ms. Roberts had a black eye at the time that the baby was beaten to death. According to the presentence [investigator], this appeared to be a common occurrence.

When an autopsy was performed on the baby it was found that the baby had healing fractures below the knees on both of its legs. It was found that the baby had healing fractures on 3 or 4 of its ribs. There is no direct proof pointing to the defendant, and he denies any abuse other than the killing. However, the combination of circumstances, the defendant's explosive temper, the defendant's physical abuse of others and the admitted killing of the baby by the defendant certainly suggest the possibility of other abuse of the baby by the defendant.

All people are complex and contain more than one side. All people contain both good and bad. The side of Richard Pederson that I have to deal with is the side that would allow him to lose his temper to the extent that he feels compelled to beat a baby to death.

At this point, any present hope of rehabilitation is nothing more than a hope which totally ignores the defendant's past history. The judicial system has made every effort to deal with the defendant by some means other than outright incarceration. Society can no longer wait for this defendant to learn to control his temper. The goal of protecting society requires that this defendant be permanently removed from society.

Accordingly, the court imposed a life sentence without possibility of parole.

Pederson argues that his sentence is unreasonable because it removes all incentive and chance for rehabilitation. He suggests that his inability to control his temper is a behavioral trait which can be modified through treatment and counselling, but that even if he could be rehabilitated through such measures, the sentence imposed by the court precludes his release into society. However, the opportunity for rehabilitation as a means of achieving protection for society from a defendant's conduct is not the controlling factor. *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1957). In *Moore*, the court noted that the objectives of criminal punishment include the protection of society, the deterrence of the individual and the public generally, the possibility of rehabilitation, and punishment or retribution for wrongdoing. *Id.* The court then said:

The primary consideration is, and presumptively always will be, the good order and protection of society. All other factors are, and must be subservient to

that end. Important as are the humanitarian considerations affecting the accused, his family and other relatives, and the importance to society of rehabilitation itself, such considerations cannot be allowed to control or defeat punishment, where other factors are ignored or subordinated to the detriment of society.

*Id. See also, State v. Hadley,* 122 Idaho 728, 838 P.2d 331 (Ct.App.1992); *Nielson v. State,* 121 Idaho 779, 828 P.2d 342 (Ct.App. 1992).

■ To determine whether a sentence is reasonable and thus would not represent an abuse of the lower court's sentencing discretion, we have held that

[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.

Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ.

*State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). *See also, State v. Broadhead,* 120 Idaho 141, 814 P.2d 401 (1991), *overruled in part by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *State v. Small,* 107 Idaho 504, 690 P.2d 1336 (1984). Where, as here, the appellant contends that the sentencing court imposed an excessively long or unduly harsh sentence, we make an independent examination of the record, having regard to the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). Thus, considering the nature of the offense (the homicide of an infant), the character of the defendant as disclosed by the record, and the interest of society, our inquiry in this case focuses on whether a life sentence without parole is reasonable.

This Court previously has expressed a view with regard to the imposition of a determinate period of incarceration during which the prisoner may not be paroled. In *State v. Eubank,* 114 Idaho 635, 759 P.2d 926 (Ct.App.1988), we said:

[A] fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society. Unfortunately, in making these determinations, a judge has complete information only in regard to retribution and deterrence, which are based on the nature of the offense. The character of the offender is not completely known because it may evolve over time. The judge must attempt to predict the defendant's future response to rehabilitative programs and the degree of risk he might pose to society if eventually released.

.　　.　　.　　.　　.

In our view, a fixed life sentence should not be regarded as a judicial hedge against uncertainty. To the contrary, a fixed life term, with its rigid preclusion of parole or good time, should be regarded as a sentence requiring a high degree of certainty—certainty that the nature of the crime demands incarceration until the perpetrator dies in prison, or certainty that the perpetrator never, at any time in his life, could be safely released.

114 Idaho at 638, 759 P.2d at 929. Here, we conclude that the gravity of the offense, infanticide through battery, as shown by the circumstances of this case is sufficiently egregious to justify an exceptionally severe measure of retribution and deterrence. We thus hold that the sentence imposed was reasonable and that the district court did not abuse its discretion.

### EIGHTH AMENDMENT CLAIM

■ The Eighth Amendment to the United States Constitution and art. 1, § 6,

of the Idaho Constitution prohibit cruel and unusual punishments. Pederson argues that, because his sentence for first degree murder is greater than many sentences ordered in other cases where defendants have received lesser fixed terms as part of unified sentences imposed for homicides, he has been subjected to a punishment in violation of the constitutional prohibitions. In essence, he invites us to engage in an exercise in comparative sentencing review. We decline this invitation. It is well settled that not every offense in like category calls for identical punishment; there may properly be a variation in sentences between different offenders, depending on the circumstances of the crime and the character of the defendant in his or her individual case. *State v. Seifart*, 100 Idaho 321, 597 P.2d 44 (1979); *State v. Smith*, 123 Idaho 290, 847 P.2d 265 (Ct.App.1993); *State v. Cambron*, 118 Idaho 624, 798 P.2d 469 (Ct.App.1990); *State v. Arnold*, 115 Idaho 736, 769 P.2d 613 (Ct.App.1989); *State v. Puga*, 111 Idaho 874, 728 P.2d 398 (Ct.App. 1986).

Rather than considering Pederson's sentence by comparison to sentences in other cases, the appropriate mode for review on his claim of cruel and unusual punishment is to determine whether his sentence is "out of proportion to the gravity of the offense committed, and such as to shock the conscience of reasonable [people]." *State v. Brown*, 121 Idaho 385, 394, 825 P.2d 482, 491 (1992). Here, of course, the death of a human being at the hands of another is the gravest of offenses. The fragile gift of life, once taken, is irreplaceable. The circumstances of this death, involving a helpless, recently born infant, and caused by striking the child in a moment of rage, was characterized by the sentencing judge as "especially heinous, atrocious and cruel and manifested exceptional depravity." He further opined that "[t]he bludgeoning to death of a six-week-old baby is a heartless, pitiless act which shows utter indifference to the suffering of the victim." We concur with these observations. After due consideration of the arguments posed on this question, we hold that Pederson's fixed life sentence is not out of all proportion to the gravity of the offense. We further conclude that the sentence is not so severe as to shock the conscience of reasonable people.

The judgment of conviction and sentence for first degree murder is affirmed.

PERRY, J., concurs.

LANSING, Judge, dissenting.

I respectfully dissent.

As the majority opinion recognizes, in *State v. Eubank*, 114 Idaho 635, 759 P.2d 926 (Ct.App.1988), this Court held that a fixed life sentence is justifiable in only two circumstances—where there is certainty that the nature of the crime demands lifelong incarceration, or there is certainty that the offender could never be safely released into society. In the present case the second of those criteria clearly is not met. There was no evidence before the sentencing court that would support a conclusion that Richard Pederson presents such a threat to the public and is so utterly unsalvageable that a determinate life sentence is necessary for the protection of society. Pederson has a history of emotional problems, but no prior record of violent crimes. There is nothing in the record even suggesting that Pederson will not be amenable to treatment, is unlikely to be rehabilitated, or presents an irredeemable risk of further violence.

Therefore, if the determinate life sentence is supportable, it must be on the first ground enunciated in *Eubank*—that the nature of the crime demands the most severe punishment that society can impose short of the death penalty. The crime that Richard Pederson committed, killing a six-week-old infant in a fit of uncontrolled rage, is shocking and reprehensible, and requires severe punishment. However, it was not the deliberate product of a coldly premeditated act, but the horrible consequence of a moment's loss of control. I cannot say that the nature of this crime, intolerable though it is, leads reasonable minds to a moral certainty that a life sentence without possibility of parole is neces-

184

sary to adequately punish this twenty-two year old man. I might be led to a different conclusion by the fact that the baby had suffered other injuries if there were evidence that Pederson had inflicted them, but there is not. While it is tempting to assume that the earlier injuries were caused by Pederson, I cannot derive the "certainty" contemplated by *Eubank* from an unverified assumption.

I would hold that an indeterminate life sentence with a lengthy minimum term of confinement, allowing for the possibility of eventual parole if the Commission of Pardons and Parole one day determines that Pederson's rehabilitative progress warrants his return to society, is sufficient to meet the sentencing objectives set out in *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).