39 P.3d 641

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jody Allan JOHNSON, Defendant–Appellant.**

No. 26636.

Court of Appeals of Idaho.

Nov. 29, 2001.

Review Denied Jan. 28, 2002.

Greg S. Silvey, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth M. Robins, Deputy Attorney General, Boise, for respondent. Kenneth M. Robins argued.

SCHWARTZMAN, Chief Judge.

Jody Allan Johnson appeals his conviction for first degree murder, arguing that the evidence presented at trial was insufficient to support the jury's verdict. Additionally, Johnson appeals his sentence of life imprisonment, with forty-five years fixed, as excessive. We affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On October 23, 1999, two young girls found the body of Noreassa Huck lying in a culvert behind a convenience store in Boise. Noreassa's body had been folded into a small shopping cart and covered with a blanket tied down by an electrical cord. The forensic pathologist's examination determined that Noreassa was killed when her throat was slashed by a sharp object, cutting both carotid arteries and the strap muscles around her neck. The subsequent investigation of her trailer uncovered evidence suggesting that Noreassa was killed as she sat in a recliner in her living room. The recliner and the floor beneath the recliner were covered with blood. Noreassa's attacker attempted to hide this blood evidence by covering the recliner with blankets and a quilt.

On October 25, twenty-seven-year-old Johnson was taken into custody as a suspect in Noreassa's murder. After being *Mirandized,* he was interviewed by two Boise City Police Detectives. In the course of the interview, Johnson stated that he had known Noreassa for approximately one year, had lived in her trailer off and on for several months prior to the murder and used methamphetamine with her on several occasions, including the night of her death. Johnson denied that his relationship with Noreassa was romantic in nature, but admitted that it had grown increasingly argumentative in the six months preceding her death. He related that she had accused him of stealing her methamphetamine, flirting with her girlfriends, and of being a homosexual because he wanted to go to a bar to spend time with male friends instead of her. Johnson stated that his recollection of the night of the killing was limited due to his being under the influence of methamphetamine, but he recalled arguing with Noreassa and asserted that she came at him with an object in her hand. Johnson then grabbed a nearby knife, and while he could not recall stabbing Noreassa, he was aware that he had injured her and ultimately knew he had killed her. Johnson then passed out for the night on Noreassa's bed. Johnson left Noreassa's body in the recliner for several days and then moved the body to the bathroom. After several more days, Johnson loaded the body into a wheeled shopping cart, wrapped it in blankets and dumped it in the culvert. Johnson tried to conceal the blood on the recliner by covering it with towels and blankets. Johnson contemplated burning down Noreassa's trailer, and took steps toward that end, but ultimately decided against it.

Johnson was charged with first degree murder and pled not guilty in district court. At trial, a jail informant testified that Johnson told his cellmates:

[H]e had killed Norreassa Huck because apparently she was a—he said she was a snitch, said that she put a couple of her friends away or his friends away, some drug cases, and then he said—he made the

statement to me that he liked sticking snitches.

And he said that—the way he said it was, like, you know, kind of like a threatening manner, kind of like he was trying to intimidate me.... He then volunteered how he killed her. He said that he pinned her down in a recliner, I guess it was—I take it it was a recliner—and pinned her shoulders down with his knees and he slit her throat.

After a four-day trial, the jury found Johnson guilty of first degree murder. The district court imposed a unified sentence of life imprisonment with forty-five years fixed. Johnson now appeals, arguing that evidence presented at trial was insufficient to support the verdict of *first* degree murder because the state presented no evidence showing the killing was willful, deliberate, and premeditated. Additionally, Johnson appeals his life sentence, with forty-five years fixed, as excessive.

## II.

## DISCUSSION

### A. Standard Of Review

■ Johnson argues that there was insufficient evidence to support the jury's verdict. Appellate review of the sufficiency of evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera–Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera–*

*Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

### B. The State Presented Sufficient Evidence For The Jury To Find That Johnson Acted Willfully, Deliberately And With Premeditation

Johnson argues there was insufficient evidence presented at trial concerning his mental state at the time of the killing to support a verdict for first degree murder. Specifically, Johnson contends that the state's evidence only involved his actions after the killing, as opposed to his actions before or during the murder, and provided no proof, directly or circumstantially, of the required elements of first degree murder, i.e., willful, deliberate and premeditated action with malice aforethought.[1] We disagree.

■ In *State v. Babb*, the Idaho Supreme Court held that:

> To establish the crime of first degree murder, direct evidence of a deliberate and premeditated purpose to kill is not required. The necessary elements of deliberation and premeditation may be inferred from the proof of such facts and circumstances as will furnish a reasonable foundation for such an inference, and where the evidence is not in law insufficient, the matter is exclusively within the province of the trier of fact to determine.

125 Idaho 934, 947, 877 P.2d 905, 918 (1994) (quoting *State v. Foley*, 95 Idaho 222, 223–24, 506 P.2d 119, 120–21 (1973)). Additionally, premeditation does not require any appreciable space of time between the intention to kill and the killing; rather, it "may be as instantaneous as two successive thoughts of the mind." *Carey v. State*, 91 Idaho 706, 710, 429 P.2d 836, 840 (1967).

■ From the facts hereinbefore summarized, the jury could have reasonably inferred that the killing perpetrated by Johnson was willful, deliberate, premeditated and with malice aforethought. We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony and the reasonable

---

1. Johnson has not questioned the correctness of any of the jury instructions on appeal.

inferences to be drawn from the evidence. *Knutson,* 121 Idaho at 104, 822 P.2d at 1001; *Decker,* 108 Idaho at 684, 701 P.2d at 304. While Johnson denied having a romantic relationship with Noreassa, the state presented the testimony of a convenience store clerk who saw Johnson and Noreassa together for several months prior to the murder and stated that they appeared to be a couple. The clerk testified that several days after the murder presumably occurred, Johnson came into her store "angry" and "frustrated" at Noreassa for accusing him of stealing her drugs, describing her as a "bitch." The jury saw the videotape of the detective's interview of Johnson where he admitted there was increasing tension in his relationship with Noreassa. The jury heard Johnson admit on the videotape that on the night of the murder, he grabbed a knife and knew he had "injured her." Also on the tape, Johnson admitted that he attempted to conceal the crime by covering the recliner with blankets.

The forensic pathologist testified that Noreassa was killed when her throat was slashed by a sharp object, consistent with a knife, which cut through her carotid arteries as well as the strap muscles around her neck. The pathologist testified that it would take "significant force" to inflict the fatal wound, which was described as "deep," five inches long, and cut through "significant muscle group[s]" several inches thick. The state also presented testimony of a jailhouse informant that Johnson admitted to killing Noreassa, by "pinn[ing] her shoulders down with his knees and [slitting] her throat."

We conclude, therefore, that there was substantial and competent evidence to support the jury's verdict implicitly finding that Johnson acted willfully, deliberately and with premeditation in slashing Noreassa's throat, inflicting the deep wound that killed her. Thus Johnson's conviction for first degree murder is affirmed.

### III.

### EXCESSIVE SENTENCE

▪ Next, Johnson appeals his unified sentence of life imprisonment, with forty-five years fixed, claiming that the district court abused its discretion by imposing an excessive sentence. Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Hedger,* 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence may constitute a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Broadhead,* 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992).

> [A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.
>
> Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

*Broadhead,* 120 Idaho at 145, 814 P.2d at 405, (quoting *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982)).

▪ Where an appellant asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez,* 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). With respect to sentences imposed under the Uniform Sentencing Act,

> the minimum period [of confinement] generally will be treated as the probable measure of confinement for the purpose of sentence review. By focusing on this period, we do not wholly disregard the aggregate length of the sentence, nor do we suggest that a prisoner will be *entitled* to parole when the minimum period has

elapsed; but we do recognize that he will be *eligible* for parole at that time.

*State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989).

Johnson's minimum period of confinement is forty-five years. Accordingly, Johnson must demonstrate that this forty-five-year period was an abuse of the district court's discretion. The maximum penalty for first degree murder where the state has not provided written notice of its intention to pursue the death penalty pursuant to I.C. § 18–4004A is fixed life imprisonment. I.C. § 18–4004. Johnson's sentence is thus within statutory bounds.

▮ Johnson argues that the sentence imposed by the district court is for all practical purposes a fixed life sentence because he will not be eligible for parole until he is seventy-three years old. Therefore, Johnson urges this court to analyze his sentence under the reasoning of *State v. Eubank,* 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct.App. 1988), where we stated: "[A] fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society." In *Eubank,* this court stated that a fixed life sentence "should not be regarded as a judicial hedge against uncertainty" and imposed only where the sentencing court has "certainty that the nature of the crime demands incarceration until the perpetrator dies in prison, or certainty that the perpetrator never, at any time in his life, could be safely released." *Id.*

▮ While it is clear that Johnson will be an old man before he is eligible for parole, we disagree that his sentence is, in essence, a fixed life sentence. We therefore review the record to determine if the sentence was an abuse of discretion. The shocking details of Johnson's crime need not be repeated here. The presentence investigation report shows that Johnson has had a long history of criminal activity and illegal drug use. Three years prior to the instant offense, Johnson was convicted of attempted murder after he stabbed a man repeatedly in the throat with a knife when a drug deal went awry. Johnson's record also reflects eleven misdemeanor convictions for such crimes as possession of marijuana, carrying a concealed weapon, burglary, petty theft and violation of probation. Johnson began using drugs at seven years of age, and has been an IV drug user since high school. The psychologist who conducted the neuropsychological examination concluded that Johnson posed a threat to others when he abuses methamphetamine and therefore recommended that he be placed in a structured and controlled environment. Because of the need to punish Johnson for his "horrible" and "depraved" crime, to protect society from the high risk he would re-offend, and because "there [was] no rational chance of rehabilitation in [Johnson's] case", the trial court imposed a life sentence with forty–five years fixed. We cannot say that the district court abused its discretion by imposing such a sentence in light of the severity of Johnson's crime, his long history of criminal and illegal drug activity, and the considerable risk that Johnson poses to society.

## IV.

## CONCLUSION

Accordingly, Johnson's conviction for first degree murder and the district court's imposition of a sentence of life imprisonment, with forty-five years fixed, are affirmed.

Judge LANSING and Judge PERRY, concur.