IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39844

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2013 Unpublished Opinion No. 610** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: August 1, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **CHRISTOPHER MARK TAYLOR,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Judgment of conviction and concurrent fixed life sentences for one count of aggravated battery upon a peace officer with a deadly weapon and persistent violator enhancement, and one count of aggravated assault upon a peace officer, with a persistent violator enhancement, <u>affirmed</u>; order denying I.C.R. 35 motion for reduction of sentences, <u>affirmed</u>.

Stephen D. Thompson, Ketchum, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

Before GUTIERREZ, Chief Judge; LANSING, Judge;
and MELANSON, Judge

_____

PER CURIAM

Christopher Mark Taylor pled guilty to one count of aggravated battery upon a peace officer, I.C. §§ 18-903, 18-907 and 18-915, enhanced for being a persistent violator, I.C. § 19-2514, and also enhanced for the use of a deadly weapon, I.C. § 19-2520. Taylor also entered an *Alford*[1] plea to one count of aggravated battery upon a peace officer, I.C. §§ 18-901, 18-905 and 18-915, enhanced for being a persistent violator, I.C. § 19-2514. The district court sentenced

_____

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

Taylor to concurrent fixed life terms. Taylor filed an I.C.R. 35 motion for reduction of his sentences, which the district court denied. Taylor appeals arguing that the concurrent life sentences are excessive.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

The question before this Court is not what sentence it would have imposed but, rather, whether the district court abused its discretion. *State v. Stevens*, 146 Idaho 139, 148-49, 191 P.3d 217, 226-27 (2008). Where reasonable minds might differ, the discretion vested in the trial court will be respected and this Court will not supplant the views of the trial court with its own. *State v. Windom*, 150 Idaho 873, 875, 253 P.3d 310, 312 (2011).

A fixed life sentence requires a high degree of certainty that the perpetrator could never be safely released back into society or that the nature of the offense requires that the individual spend the rest of his or her life behind bars. *Windom*, 150 Idaho at 876, 253 P.3d at 313. *See also State v. Li*, 131 Idaho 126, 129, 952 P.2d 1262, 1265 (Ct. App. 1998); *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct. App. 1988).

Taylor contends that his sentences are excessive. Because of the persistent violator enhancements, the maximum sentences the district court could have imposed were life in prison on both counts. The sentences imposed did not exceed the maximum. Therefore, Taylor must

2

show that the sentences were unreasonable under any reasonable view of the facts. *See Windom*, 150 Idaho at 875, 253 P.3d at 312. Taylor's crimes are summarized as follows: An officer attempted a traffic stop on a car driven by Taylor. Taylor attempted to elude the officer. A chase ensued with Taylor reaching a speed of 100 mph at times. At one point Taylor briefly stopped his vehicle and fired a shotgun at the officer. The officer was hit but returned fire and continued the pursuit after Taylor again attempted to flee. Another officer tried to block Taylor's path but Taylor turned his vehicle toward the officer's vehicle, resulting in the aggravated assault charge. Ultimately, Taylor crashed his car and was captured. The officer who was wounded by the shotgun is now blind in his left eye. When Taylor committed these crimes he was a three-time convicted felon and was on probation. In addition to the prior felonies (possession of a controlled substance, eluding a peace officer and grand theft by possession of stolen property), Taylor's record includes numerous misdemeanor convictions including driving under the influence, contempt, disturbing the peace, possession of drug paraphernalia, inattentive driving, and fleeing or attempting to elude a peace officer.

At sentencing, the district court specifically recognized that the sentencing decision was committed to its discretion and that it was required to act within the bounds of that discretion through an exercise of reason. The district court discussed the goals of sentencing, as well as the factors set forth in I.C. § 19-2521 and the standard set forth in *Windom* for imposition of a fixed life sentence. As to Taylor's potential for rehabilitation, the district court observed:

> In 2002 was your first felony conviction and it was at that time you were afforded the rider program. It was noted that you were a disciplinary problem then, and yet the department indicated it was reluctantly recommending probation.
> And, certainly, it was not long after you were placed back out on probation that your probation was violated and your sentence was reimposed. And then you were again found in the penitentiary setting to be a disciplinary problem, and the parole commission elected to pass you on to top your time in 2008.
> And then once you topped your time in 2008 and were out, it wasn't long before you were back within the criminal justice system in 2009 and 2010 for your second and third felony convictions; and yet even then you were afforded once again the opportunity for probation. And it was again while you were on probation that [the officers] had the encounter with you.
> And certainly, this court recognizes that you've been afforded every opportunity to be a productive member of society, to change your behavior and be a good father, to be a good son, a good husband, but that has not proven to be the case.

3

In sentencing Taylor, the district court concluded that Taylor had never been a law abiding citizen and that it was unlikely that he ever would be. The district court also noted that Taylor's crimes caused serious harm. Given Taylor's record of law violations, his egregious crimes resulting in severe permanent injury to one law enforcement officer and risk of harm to another and the lack of any realistic potential for rehabilitation as found by the district court, we cannot say that the district court abused its sentencing discretion.

Taylor argues that the district court did not consider certain mitigating factors at sentencing. Specifically, Taylor asserts that the district court did not consider his substance abuse, mental health, and remorse. Taylor also argues that his assertion that he was attempting to get the officers to kill him rather than harm the officers should have been considered as a mitigating factor. It appears from the record, however, that the district court did consider all of these factors in sentencing Taylor. Further, Taylor argues that the district court should not have considered dismissed charges disclosed in the presentence investigation report as part of Taylor's prior record but the record does not suggest that the district court considered any prior offenses except actual convictions.

Taylor also argues that the district court abused its discretion by considering Taylor's tattoos in determining his sentence. Taylor has numerous tattoos. Tattoos on his eyebrows read "White Trash." A Tattoo on his neck reads "F**k Authority." The district court referred to these tattoos as follows:

> You have a long history of not respecting the norms of society, as well as authority, which--and while I recognize that I don't sentence someone for tattoos, certainly in some eyes that is artwork. However, I think that there are some expressions of words, and while you have every right to say them, certainly it suggests to me that when you write across your forehead "white trash" you have no respect for yourself and you have no respect for others. And when you write along your neck "F authority," you have no respect for society and you have no respect for law enforcement.

Taylor has failed to show that the district court abused its discretion in the consideration of the messages conveyed by these tattoos.[2]

---

[2] Taylor has many other tattoos--some with offensive or gang-related meanings. While these tattoos were described in the presentence investigation report and the prosecutor did refer to some of these tattoos at the sentencing hearing, there is no suggestion in the record that the

Taylor also contends that his sentences are unduly harsh based on lesser sentences imposed in other cases. However, this Court will not engage in an exercise of comparative sentencing. *State v. McFarland*, 130 Idaho 358, 365, 941 P.2d 330, 337 (Ct. App. 1997); *State v. Pederson*, 124 Idaho 179, 183, 857 P.2d 658, 662 (Ct. App. 1993); *State v. Smith*, 123 Idaho 290, 294, 847 P.2d 265, 269 (Ct. App. 1993). It is well settled that not every offense in like category calls for identical punishment; there may properly be a variation in sentences between different offenders, depending on the circumstances of the crime and the character of the defendant in his or her individual case. *Pederson*, 124 Idaho at 183, 857 P.2d at 662. Thus, we decline Taylor's invitation to conduct a comparative review of his sentences.

Next, we review whether the district court erred in denying Taylor's Rule 35 motion. A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *Lopez*, 106 Idaho at 449-51, 680 P.2d at 871-73. Taylor concedes that no new or additional information was provided in support of his Rule 35 motion and he has failed to show that his sentence was excessive when imposed. No abuse of discretion has been shown.

The state concedes that the sentences imposed in this case are "unquestionably weighty." However, having reviewed the record in this case, we cannot say that the district court abused its discretion in sentencing Taylor to concurrent fixed life sentences or in denying his Rule 35 motion. Therefore, Taylor's judgment of conviction and sentences, and the district court's order denying Taylor's Rule 35 motion, are affirmed.

---

district court considered them in sentencing Taylor. In any event, we know of no authority prohibiting a judge from considering a defendant's tattoos at sentencing.