## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 42357

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, February 2015 Term |
| | ) | |
| v. | ) | 2015 Opinion No. 34 |
| | ) | |
| KENNY CARL STRUHS, | ) | Filed: April 1, 2015 |
| | ) | |
| Defendant-Appellant. | ) | Stephen W. Kenyon, Clerk |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

The judgment of the district court is affirmed.

Sara B. Thomas, State Appellate Public Defender, Boise, for appellant.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent.

_____

J. JONES, Justice.

Kenny Carl Struhs pleaded guilty to vehicular manslaughter, was sentenced to a unified term of fifteen years in prison with ten years fixed, and was ordered to pay restitution to the victim's widow, including an amount compensating her for health insurance premiums she paid for coverage between the time of the accident and the time of Struhs' sentencing. On appeal, Struhs challenged the sentence as excessively harsh and the award of restitution for insurance premiums as unauthorized under Idaho Code section 19-5304. We affirm.

### I.
### FACTUAL AND PROCEDURAL BACKGROUND

On August 2, 2012, Kenny Carl Struhs was invited to the home of a friend for a barbecue in Blackfoot. Struhs had five or six beers before arriving at the barbecue and had five to seven more once there. Later, Struhs was involved in a confrontation and left in his vehicle. He entered an intersection without observing a stop sign and collided with a motorcycle driven by Brent Hansen, with Brent's six-year-old daughter, Abigail Hansen, a passenger. Struhs left the scene of

1

the accident and nearly struck two pedestrians before he attempted a U-turn at a dead end and lost control of his vehicle. While Abigail suffered relatively minor injuries, Brent did not survive. A blood test determined that Struhs had a blood alcohol concentration of .157.

Struhs was charged with two felonies—leaving the scene of an accident resulting in injury or death under Idaho Code section 18-8007 and vehicular manslaughter, alternately, under Idaho Code section 18-4006(3)(a) or (b). After initially pleading not guilty to both charges, Struhs later reached an agreement with the State pursuant to which he pleaded guilty to a violation of Idaho Code section 18-4006(3)(b), vehicular manslaughter resulting from driving under the influence of alcohol, drugs, or any other intoxicating substance. In exchange, the State agreed to dismiss the charge of leaving the scene of an accident resulting in injury or death. The agreement did not address sentencing. On March 12, 2013, the district court sentenced Struhs to a unified term of fifteen years in prison with ten years fixed. The district court entered judgment and dismissed the charge of leaving the scene of an accident.

The State sought restitution in the amount of $53,406.04 on behalf of Brent's widow, Emilie Hansen, pursuant to Idaho Code section 19-5304. That amount included $761.85 for premiums paid by Emilie for health insurance coverage for December 2012 to February 2013. The State argued that restitution for the premiums was appropriate because Emilie lost her coverage under the plan sponsored by Brent's employer and was forced to purchase a more expensive individual plan. Struhs objected to various elements of the State's restitution request, including the amount to compensate Emilie for insurance premiums. Following a hearing, the district court ordered Struhs to pay restitution in the amount of $51,651.54, including medical expenses, a portion of the requested funeral expenses, lost wages, and $761.85 for Emilie's insurance premiums.

Struhs timely appealed and the case was initially assigned to the Court of Appeals. He made two arguments there. First, he argued that the district court abused its discretion when it ordered restitution for Emilie's insurance premiums.[1] Second, he argued that the district court abused its discretion by imposing an excessively harsh sentence in light of his remorse and substance abuse problem. The Court of Appeals held that the district court did not abuse its discretion in sentencing Struhs, but improperly ordered restitution for Emilie's insurance

---

[1] Struhs did not argue that any other portion of the district court's restitution order was improper.

2

premiums. The State filed a petition for review, which this Court granted.

## II.
## ISSUES ON APPEAL

1. Whether the district court abused its discretion by ordering restitution for premiums paid by the decedent's widow for health insurance coverage between the date of the crime and the date of sentencing.

2. Whether the district court abused its discretion by sentencing Struhs to a unified term of fifteen years in prison with ten years fixed.

## III.
## DISCUSSION

### A. Standard of Review

"The decision regarding whether to order restitution, and in what amount, is within the district court's discretion and is guided by consideration of the factors set forth in Idaho Code section 19-5304(7)." *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011). "The issue of causation in restitution cases is a question of fact to be decided by the trial court. The district court's factual findings with regard to restitution will not be disturbed on appeal if supported by substantial evidence." *Id.* (internal citations omitted). Likewise, "[s]entencing is within the discretion of the trial court, and a defendant has the burden of showing a clear abuse of that discretion." *State v. Delin*, 102 Idaho 151, 152, 627 P.2d 330, 331 (1981).

In evaluating a claim that the district court abused its discretion, this Court asks,

> first, whether the trial court correctly perceived the issue as one of discretion; second, whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and finally, whether the trial court reached its decision by an exercise of reason.

*State v. Windom*, 150 Idaho 873, 875, 253 P.3d 310, 312 (2011).

"Upon granting a petition for review of a Court of Appeals' decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the trial court." *Id.*

### B. The district court properly awarded restitution for Emilie's insurance premiums.

The district court recognized that "[t]he decision whether to order restitution is discretionary." It also clearly articulated its reasons for ordering restitution as it did. Its order included $761.85 paid by Emilie for premiums for health insurance covering three months between the accident and Struhs' sentencing. On appeal, Struhs argues that Idaho Code section 19-5304 does not permit restitution for Emilie's insurance premiums.

3

Idaho Code section 19-5304(2) authorizes a court to "order a defendant found guilty of any crime which results in economic loss to the victim to make restitution to the victim." Such restitution "shall be ordered for any economic loss which the victim actually suffers." I.C. § 19-5304(2). In homicide cases, "the immediate family of the actual victim" is also a victim for purposes of restitution. I.C. § 19-5304(1)(e)(i). "Manslaughter is included in the category of homicide cases." *State v. Straub*, 153 Idaho 882, 888, 292 P.3d 273, 279 (2013). "Economic loss" is defined to include, "but is not limited to, the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death or emotional distress." I.C. § 5304(1)(a). "The phrase 'out-of-pocket' is defined as 'consisting of or requiring an actual cash outlay.'" *Straub*, 153 Idaho at 889, 292 P.3d at 280 (quoting *Webster's Third New International Dictionary, Unabridged Edition* (1971)). The district court concluded that the amount Emilie expended to acquire health insurance was an "out-of-pocket expense [that] directly resulted from Struhs' criminal conduct."

In support of his claim that the district court abused its discretion by awarding restitution for Emilie's insurance premiums, Struhs relies exclusively on this Court's opinion in *Straub*. Straub pleaded guilty to vehicular manslaughter and was ordered to pay restitution to the decedent's widow, including $530,697.20 for future lost wages and future medical insurance premiums. *Id.* at 885, 292 P.3d at 276. Straub argued that the award was improper as to that amount because Idaho Code section 19-5304 does not authorize restitution for prospective economic losses. *Id.* at 888, 292 P.3d at 279. This Court agreed. As to the future wages, the Court held that restitution awards for lost wages "are limited to the quantifiable out-of-pocket losses at the time of the restitution award," and that the loss of possible, future wages does not constitute an "actually suffered" economic loss at the time of the award.[2] *Id.* at 890, 292 P.3d at 281. As to the insurance premiums, the Court stated:

> On the award of future medical insurance premiums, Straub specifically disputes the $30,697.20 for "anticipated insurance premiums." According to the district court, these future premiums are not based on speculation. The premiums are for continuation of the COBRA health coverage program . . . purchased after the accident but before the

---

[2] In *Straub*, the restitution award was made four days after the sentencing hearing. 153 Idaho at 885, 292 P.3d at 276. However, the hearing and decision on restitution preceded the sentencing hearing. Even where the order awarding restitution is entered after sentencing, the cut-off point for computation of restitution is the date of sentencing.

> restitution hearing. However, there is a distinction between medical expenses and medical insurance. Medical expenses are expressly included in the definition for economic loss in I.C. § 19-5304(1)(a) if they are a direct result of the criminal conduct. In contrast, the acquisition of medical insurance does not directly correlate as a direct consequence of the criminal conduct. Although it is foreseeable that the death of the lone family breadwinner would leave the family without health insurance, foreseeability does not equal a "direct" result.

*Id.* According to Struhs, *Straub* stands for the proposition that restitution for expenses incurred to replace a health insurance plan lost as a result of criminal conduct is categorically improper under Idaho Code section 19-5304 because such an expense is not a direct result of that conduct.

The State argues that the *Straub* holding on restitution for insurance hinged on the prospective nature of those premiums, and not the mere fact that insurance premiums were at issue. The restitution award in *Straub* compensated the victim both for premiums paid between the date of the crime and the date of sentencing, and for prospective premiums for three additional years. *Id.* at 887–88, 292 P.3d at 278–79. Straub challenged only the portion of the award for prospective insurance premiums. *Id.* at 888, 292 P.3d at 279. Thus, the Court in *Straub* did not address the question whether restitution is available for insurance premiums covering the period between the date of the crime and the date of sentencing. The State argues that the contributions Brent's employer formerly made towards Emilie's insurance coverage are, like lost wages and unlike the prospective insurance premiums at issue in *Straub*, a quantifiable, direct, out-of-pocket loss at the time of sentencing.

In *Straub*, this Court determined that the future insurance premiums were not a "direct consequence of [Straub's] criminal conduct." *Id.* at 890, 292 P.3d at 281. In doing so, the Court emphasized that the premiums were prospective and expressed concern that "[i]f we allow all foreseeable damages to be clothed in criminal restitution, we will draw to a standstill an already overburdened criminal court process." *Id.* "Prosecutors and criminal defense attorneys would then have to engage in civil discovery and trials of a civil nature on top of already complex criminal procedure and trials." *Id.* Where the State seeks an award of restitution for future losses, this concern is warranted. Adjudicating the propriety of such an award would involve significant uncertainty regarding how far in the future the victim should be awarded restitution for certain costs and whether the defendant directly caused them. In the case of future insurance premiums, for instance, it may well be unclear whether, when, and how much the victim's expenses associated with insurance premiums might have increased even if the criminal conduct had not

5

occurred and whether, when, and how much those expenses might yet decrease despite that conduct. Idaho Code section 19-5304 pre-empts those difficult questions by providing that "[r]estitution shall be ordered for any economic loss which the victim actually suffers." "Webster's Dictionary defines the word 'actually' as something 'existing in fact or reality' and in contrast with the words 'potential and possible.'" *Straub*, 153 Idaho at 889, 292 P.3d at 280 (quoting *Webster's Third New International Dictionary, Unabridged Edition* (1971)). Like future wages, premiums for future insurance coverage do not constitute a loss the victim has actually suffered at the time of sentencing. As this Court concluded, the district court erred in *Straub* by awarding "speculative future wages and other expenses rather than direct out-of-pocket expenses actually suffered," *id.* at 890, 292 P.3d at 281, not simply by awarding restitution for insurance premiums.

The Court's reasoning in *Straub* does not suggest that Idaho Code section 19-5304 categorically forbids restitution for medical insurance, but rather that such restitution must be limited to actual losses incurred as of the time of sentencing. Brent had medical insurance coverage that was paid for by his employer. Had he survived the accident, the employer would have paid this fringe benefit as part of his compensation package for the period of time at issue here. Because Brent did not survive, Emilie made an out-of-pocket expenditure to replace a financial benefit that was lost as a direct result of Struhs' criminal conduct. Because the State is requesting restitution for premiums covering only the period between the crime and Struhs' sentencing, the district court could properly have awarded her restitution for that loss.[3]

## C. Struhs has not shown that the district court abused its discretion by sentencing him to a unified term of fifteen years in prison with ten years fixed.

Struhs argues that the district court abused its discretion when it sentenced him to a unified term of fifteen years in prison with ten years fixed.

The standards governing this Court's review of a trial court's sentencing decisions are well settled.

Whenever a sentence is within the statutory limits, the defendant bears the burden of

---

[3] The district court awarded Emilie the full $761.85 she paid for medical insurance coverage. The record indicates that Brent's employer would have paid a lesser amount than Emilie paid for his coverage under the company plan during the period in question. Group plans generally are less expensive than individual plans. Nevertheless, Emilie was out of pocket the amount awarded by the district court and there is nothing in the record to indicate that this was some sort of Cadillac plan or otherwise unreasonable. But for Brent's death, she would not have incurred any expense for medical coverage.

demonstrating the sentence is an abuse of discretion. A sentence is reasonable if it appears necessary to achieve the primary objectives of protecting society or the related sentencing goals of deterrence, rehabilitation, or retribution. A sentence is excessive if it is unreasonable under any rational view of the facts. For the purpose of review, this Court considers the fixed term of confinement as the sentence imposed. This Court will independently review the record and consider the nature of the offense, character of the offender, and the public's interest in determining whether a sentence is excessive.

*State v. Hansen*, 138 Idaho 791, 797, 69 P.3d 1052, 1058 (2003) (internal citations omitted). "A sentence need not serve all sentencing goals; one may be sufficient." *State v. Sheahan*, 139 Idaho 267, 285, 77 P.3d 956, 974 (2003).

A violation of Idaho Code section 18-4006(3)(b) is punishable "by a fine of not more than fifteen thousand dollars ($15,000), or by a sentence to the custody of the state board of correction not exceeding fifteen (15) years, or by both such fine and imprisonment." I.C. § 18-4007(3)(b). Because Struhs was sentenced to a term of fifteen years in prison with ten years fixed and that sentence is within the statutory limit, it is his burden to show that the sentence is unreasonable under any rational view of the facts.

The district court clearly acknowledged the discretionary nature of sentencing, explicitly considered the sentencing objectives in determining an appropriate sentence, and identified the protection of society as the goal primarily motivating its sentencing choice. The court noted that Struhs had an extensive history of misdemeanor offenses involving alcohol and vehicles, including seven convictions for driving without privileges, three open container convictions, and convictions for failure to stop at an accident, driving with an invalid license, driving without insurance, inattentive driving, and driving under the influence. In addition, the court noted Struhs' pattern of driving under the influence of alcohol. According to Struhs, he "drove intoxicated nearly every day" in the year prior to the accident at issue here, including regular trips from North Dakota to Blackfoot, Idaho, during which Struhs would consume as many as thirty-six beers. Finally, the court expressed doubt whether Struhs adequately recognized the severity of his problem with alcohol and would commit to treatment. A substance abuse report commissioned by the court states that Struhs "displays a desire to participate in treatment at this time," but also that the desire is likely a result of "the serious consequences [Struhs] is facing." The same report notes that Struhs' "behavior prior to committing his current offense displayed a non-acceptance or resistance to [the] severity of his substance problem despite possible serious adverse consequences or effects on himself or others," and the presentence report states that it

7

does "not appear that [Struhs] fully grasped his current relapse potential along with the seriousness of his substance abuse." Given these facts, the district court reasonably concluded that Struhs presents a considerable risk to the public.

Struhs argues that the district court failed to properly consider his remorse and alcoholism as mitigating factors. In each case, Struhs is incorrect. The district court discussed Struhs' remorse, noting that while Struhs expressed sorrow during the sentencing hearing, the presentence report indicated that Struhs showed "very little remorse" regarding the accident. Struhs argues that he has consistently taken responsibility for the accident, but he does not deny that he left the scene. According to Struhs, he did so because, while he "hear[d] a loud noise," he did not then realize that he had been involved in an accident. According to the officer who first interviewed Struhs on the scene, however, Struhs stated that "he got hit by someone in the intersection." Struhs apparently knew as of then, at least, that he had been involved in a collision. The district court also discussed Struhs' alcoholism as a potentially mitigating factor. The court noted that Struhs has "a severe substance abuse problem," likely instigated by a difficult childhood. In sentencing Struhs to ten, and not fifteen, years fixed, the district court judge noted his desire to supervise Struhs for a period of five years following Struhs' release and his hope that the prison environment would ameliorate Struhs' substance abuse problem.

The district court considered the need to protect the public, the devastating consequences for Emilie, now a widow with five young children, and Struhs' alcoholism and need for treatment. "The weight to be given to [his] expressions of remorse and his substance abuse was for the district court to determine." *State v. Baker*, 136 Idaho 576, 579, 38 P.3d 614, 617 (2001) (holding that a fixed sentence of ten years in prison for vehicular manslaughter was not an abuse of discretion, despite the defendant's expressions of remorse and struggles with substance abuse). Though reasonable minds might differ as to the propriety of Struhs' sentence, "[i]n deference to the trial judge, this Court will not substitute its view of a reasonable sentence where reasonable minds might differ." *State v. Arthur*, 145 Idaho 219, 224, 177 P.3d 966, 971 (2008).

## IV.
## CONCLUSION

The judgment of the district court is affirmed.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.

8