IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 46335

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, November 2019 Term |
| | ) | |
| v. | ) | Opinion filed: February 4, 2020 |
| | ) | |
| SHANE LEE DOBBS, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Thomas W. Whitney, District Judge.

The judgment of the district court is affirmed.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for appellant Shane Lee Dobbs. Andrea W. Reynolds argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Jeffrey D. Nye argued.

_____

STEGNER, Justice

Shane Lee Dobbs appeals from his judgment of conviction and the resulting sentence imposed by the Canyon County district court upon his guilty plea of lewd conduct with a minor under sixteen. On appeal, Dobbs contends that the district court abused its discretion in fashioning a sentence based in part on a desire to "deter[ ] private vengeance" against him. Dobbs also contends that his unified sentence of twenty-two years, with ten years fixed, is excessive in light of the mitigating factors. For the reasons stated below, we affirm Dobbs' judgment of conviction and sentence.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On February 19, 2018, Tonya Dobbs reported to the Middleton Police Department that her brother, Shane Dobbs, had forced her fifteen-year-old daughter, L.T., to have sexual intercourse with him. When interviewing L.T. about the incident, L.T. informed the reporting officer that she went over to her uncle's house to "hang out." Once there, Dobbs took L.T. to his bedroom to show her his new bed. The two were watching a movie on his bed when Dobbs

1

started "cuddling," "touching," and "kissing" her. Dobbs then proceeded to engage in other sexual acts with L.T., including sexual intercourse. According to L.T., this was the first time her uncle had done anything sexual to her.

On February 21, 2018, the State charged Dobbs with lewd conduct with a minor under sixteen, I.C. § 18-1508, and sexual abuse of a child under sixteen, I.C. § 18-1506. Pursuant to a plea agreement, Dobbs pleaded guilty to lewd conduct with a minor under sixteen and the State dismissed the remaining charge.

At sentencing, the State recommended a unified sentence of twenty years, with eight years fixed. The defense recommended a unified sentence of seven years, with two years fixed. The district court exceeded both recommendations, sentencing Dobbs to a unified sentence of twenty-two years, with ten years fixed. The court also ordered Dobbs to pay court costs in the amount of $895.50, restitution in the amount of $407.89, and a civil penalty in the amount of $5,000.00. Dobbs timely appeals his sentence.

## II.    STANDARD OF REVIEW

Appellate review of a sentence is based on an abuse of discretion standard. *State v. Miller*, 151 Idaho 828, 834, 264 P.3d 935, 941 (2011) (citation omitted). When reviewing a lower court's decision for an abuse of discretion, this Court analyzes "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Weigle*, 165 Idaho 482, 489, 447 P.3d 930, 937 (2019) (alteration in original) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## III.    ANALYSIS

Dobbs asks this Court to focus on comments made by the district court at the beginning of the sentencing hearing. He contends that the district court abused its discretion in fashioning a sentence based in part on a desire to "deter[ ] private vengeance." Dobbs also contends that a much shorter sentence was warranted under the facts of this case. The State contends that the district court did not abuse its discretion in sentencing Dobbs because the court's statement regarding deterring private vengeance was consistent with the definition of "punishment," which is a legitimate sentencing factor. We hold that the district court did not abuse its discretion in fashioning Dobbs' sentence, and that his sentence is not excessive.

**A.**   **The district court did not abuse its discretion when it referred to "deter[ring] private vengeance" during Dobbs' sentencing.**

At the beginning of Dobbs' sentencing, before pronouncing his sentence, the district court made some introductory remarks explaining its sentencing philosophy in general, as well as its reasoning behind Dobbs' sentence in particular. When describing the fourth objective of criminal sentencing, punishment, the court explained:

> [P]unishment in this sense, in the sense of a child sex crime, often can be explained by saying it deters private vengeance. And so the child that you had sex with there may be a relative or friend of hers who thinks, well, the sentence imposed was not sufficiently serious, and so I need to take the law into my own hands. So it is -- it's not the primary factor in sentencing, but it's a legitimate sentencing factor for a court to consider. The sentence must send a message to others in society that there is really no need for anyone to take the law into his or her own hands.

On appeal, Dobbs contends that this was an abuse of discretion because a district court may not consider preventing vigilante justice as a proper objective in sentencing.

"[A] fundamental requirement in the proper exercise of sentencing discretion is reasonableness." *State v. Charboneau*, 124 Idaho 497, 499, 861 P.2d 67, 69 (1993) (citation omitted). A sentence is reasonable if it appears necessary to achieve the objectives of criminal punishment. *State v. Struhs*, 158 Idaho 262, 267–68, 346 P.3d 279, 284–85 (2015) (quoting *State v. Hansen*, 138 Idaho 791, 797, 69 P.3d 1052, 1058 (2003)). "The objectives of criminal punishment are protection of society, deterrence of the individual and the public, possibility of rehabilitation, and punishment or retribution for wrongdoing, with the primary objective being the protection of society." *State v. Bailey*, 161 Idaho 887, 895, 392 P.3d 1228, 1236 (2017) (quoting *State v. Jimenez*, 160 Idaho 540, 544, 376 P.3d 744, 748 (2016)). "Moreover, it is clear, as a matter of policy in Idaho, that the primary consideration is 'the good order and protection of society.' All other factors must be subservient to that end." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982) (quoting *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956)). The district court has the discretion to weigh these objectives and to give them the weight deemed appropriate. *Bailey*, 161 Idaho at 895, 392 P.2d at 1236 (citations omitted).

"Although the trial courts are to consider the[ ] four [sentencing] criteria when determining a sentence, they are not required to use only the specific words contained in the[ ] objectives and no others when articulating the sentence they are imposing." *State v. Wersland*, 125 Idaho 499, 503, 873 P.2d 144, 148 (1994). In *Wersland*, the defendant argued that the

district court abused its discretion by considering "vindicating the victim and reassuring society and imposing just moral blame" in fashioning his sentence. *Id.* at 502, 873 P.2d at 147. We affirmed the sentence, rejecting the defendant's argument that a district court was limited to the specific language contained in the objectives. *Id.* at 503, 873 P.2d at 148. The phrases used by the district court in that case, i.e., "vindicating the victim" and "imposing just moral blame," were "simply alternative ways of stating the fourth objective, punishment or retribution for wrongdoing." *Id.* Therefore, the district court did not erroneously apply the objectives. *Id.*

Punishment and retribution can be defined in numerous ways. Black's Law Dictionary defines "punishment" as "[a] sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law." *Punishment*, Black's Law Dictionary (11th ed. 2019). Similarly, "retribution" is defined as "[p]unishment imposed for a serious offense; requital"; "[s]evere punishment for bad behavior"; or "[s]omething justly deserved; repayment; reward." *Retribution*, Black's Law Dictionary (11th ed. 2019). A subcategory of "punishment" is "retributive punishment," which is defined as "[p]unishment intended to satisfy the community's retaliatory sense of indignation that is provoked by injustice." *Retributive Punishment*, Black's Law Dictionary (11th ed. 2019). Synonyms for "retribution" have included words such as "payback," "revenge," and "vengeance." Online Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/retribution (last visited Jan. 30, 2020).

In *Gregg v. Georgia*, 428 U.S. 153 (1976), when discussing the retributive aspect of capital punishment, the U.S. Supreme Court explained society's need for at least some kind of retribution:

> In part, capital punishment is an expression of society's moral outrage at particularly offensive conduct. This function may be unappealing to many, but it is essential in an ordered society that asks its citizens to rely on legal processes rather than self-help to vindicate their wrongs.
>
> "The instinct for retribution is part of the nature of man, and channeling that instinct in the administration of criminal justice serves an important purpose in promoting the stability of a society governed by law. When people begin to believe that organized society is unwilling or unable to impose upon criminal offenders the punishment they 'deserve,' then there are sown the seeds of anarchy of self-help, vigilante justice, and lynch law." *Furman v. Georgia,*[408 U.S. 238, 308 (1972)] (Stewart, J., concurring).
>
> "Retribution is no longer the dominant objective of the criminal law," *Williams v. New York*, 337 U.S. 241, 248 (1949), but neither is it a forbidden

4

objective nor one inconsistent with our respect for the dignity of men. *Furman v. Georgia*, 408 U.S. at 394–95 (Burger, C.J., dissenting); *id.* at 452–54 (Powell, J., dissenting); *Powell v. Texas*, 392 U.S. 531, 535–36 (1968) (plurality opinion) . . . .

*Id.* at 183–84 (plurality opinion) (footnote omitted) (parallel citations omitted).

Although this Court has not had the opportunity to discuss whether the deterrence of private vengeance is an appropriate sentencing consideration, the Idaho Court of Appeals has. *See State v. Campbell*, 123 Idaho 922, 931, 854 P.2d 265, 274 (Ct. App. 1993). In *Campbell*, the defendant appealed his sentence of three concurrent life sentences, with fifteen years fixed, for two counts of rape and one count of lewd conduct with a minor. *Id.* at 928–29, 854 P.2d at 271–72. In affirming the district court's sentence, the Court of Appeals explained that "it is clear from this record that the district court took into account the appropriate sentencing criteria," which included a discussion of retribution:

> The suppression of private vengeance is a legitimate role of sentencing. Under the concept of retribution, a sentence must be significant enough that those who have been harmed, the victims and their families, can recognize that punishment has been imposed. It may not be the same sentence that those who have been harmed would impose, but it must be enough that responsible people can say that enough has been done. They must be able to say that out of this there will not be private vengeance. We will not have these matters settled in the streets or privately. They will be settled within a system, and the sentence must accomplish that.

*Id.* at 931, 854 P.2d at 274; *see also State v. Landreth*, 118 Idaho 613, 616, 798 P.2d 458, 461 (Ct. App. 1990) (citation omitted) ("Although the function of retribution may be unappealing to many, we recognize it as essential to an ordered society that expects its citizens to rely on the legal processes rather than on self-help to vindicate their wrongs.").

The sentencing factors set out in *Toohill* include as the "primary consideration . . . 'the good order and protection of society.'" *Toohill*, 103 Idaho at 568, 650 P.2d at 710. The "good order" of society includes the deterrence of private vengeance. As a result, we find no error in the district court's identification of the deterrence of self-help vengeance as an appropriate factor in sentencing.

We hold that in this case there is no evidence in the record showing that the district court erred in its consideration of deterrence of private vengeance in fashioning Dobbs' sentence. Rather, the court discussed deterrence of private vengeance in a general sense as something that can be encompassed within punishment and as a message to society as a whole. The paramount goal of sentencing is the "good order and protection of society." *See Toohill*, 103 Idaho at 568,

650 P.2d at 710. Deterrence of private retribution is part and parcel of the good order of society. Imposition of a sentence that ignores this facet of sentencing runs the risk of members of society taking the law into their own hands. The district court neither condoned private vengeance nor extended Dobbs' sentence based on its concern with private vengeance. Moreover, right after the court made its statement regarding vengeance, it stated, "[l]et me turn specifically, though, to the factors in your case that really influenced me," and then addressed the factors identified in Idaho Code section 19-2521 in a lengthy and well-reasoned explanation of the sentence imposed. Accordingly, we hold the district court did not err in its consideration of the deterrence of private retribution in its sentencing colloquy.

### B. We hold that Dobbs' sentence was not excessive.

Dobbs also argues that his sentence, in its entirety, is excessive. According to Dobbs, a much shorter sentence was warranted due to the mitigating factors present in his case, including that this was his first sex offense, that he was remorseful, and that he had a moderate risk of reoffending. The State argues that Dobbs' sentence is not excessive in light of the aggravating factors, including his criminal history, the egregious nature of the offense, and his refusal to accept responsibility.

"A sentence is excessive if it is unreasonable under any rational view of the facts." *State v. Shutz*, 143 Idaho 200, 203, 141 P.3d 1069, 1072 (2006) (quoting *Hansen*, 138 Idaho at 797, 69 P.3d at 1058). "When a sentence is challenged as being excessively harsh, we independently review the record on appeal, having due regard for the nature of the offense, the character of the offender, and the protection of the public interest." *State v. Moore*, 150 Idaho 17, 21, 244 P.3d 161, 165 (2010) (quoting *State v. Jeppesen*, 138 Idaho 71, 76, 57 P.3d 782, 787 (2002)). "When considering whether the district court abused its sentencing discretion, we review the entire sentence[.]" *Bailey*, 161 Idaho at 895, 392 P.3d at 1236 (citation omitted). However, "we presume that the defendant's term of confinement will probably be the fixed portion of the sentence, because whether or not the defendant's incarceration extends beyond the fixed portion of the sentence will be within the sole discretion of the parole board." *Id.* (citation omitted).

Here, the district court sentenced Dobbs to twenty-two years, with ten years fixed, for lewd conduct with a minor child under sixteen. Lewd conduct with a minor child under sixteen is punishable "for a term of not more than life." I.C. § 18-1508. Accordingly, because Dobbs was

sentenced within the statutory limits, it is his burden to prove that his sentence is excessive under any rational view of the facts.

We hold that Dobbs' sentence, though significant, is not unreasonable under any rational view of the facts. Before pronouncing the sentence, the district court explained the reasoning behind Dobbs' sentence. In addition to considering the four objectives of criminal punishment, noted above, the district court also considered the factors identified in Idaho Code section 19-2521, which sets forth mitigating and aggravating factors to be considered by the sentencing court before imposing a prison sentence. In reviewing the mitigating factors present in this case, the court recognized that Dobbs had "a lot of good qualities" and that he had a lot of support from his family and the community. The court acknowledged that Dobbs had an exemplary work ethic, had many interests, and had "drive," and that it did not believe the crime was premeditated.

However, in reviewing the aggravating factors, the court explained that the "impact on the child, the impact on your sister, [and] the impact on the family . . . is awful. It is profound." The court also explained that Dobbs continued to blame the victim and alcohol for what he had done instead of accepting responsibility. The court noted the relative age difference between the parties, who were fifteen and thirty-eight years old at the time of the offense, as well as the close family relationship between Dobbs and the victim, that of uncle and niece. The court was also justifiably concerned that Dobbs committed this crime while he was on parole for a previous felony and noted his considerable criminal record, which consisted of "[twenty-two] misdemeanor convictions and . . . three prior felonies." The court also noted the aggravating circumstances of the sexual encounter itself. The court expressed concern with the fact that the abuse lasted several hours and involved extreme and profoundly intimate sexual contact. The court explained its belief that Dobbs was a "very dangerous person" and a "danger to society," specifically referencing his psychosexual evaluation, which placed him at the upper end of the moderate risk to re-offend. The court explained that Dobbs would need sex offender treatment, which the court believed could best be accomplished within the confines of a penal facility. According to the court, this case "is unquestionabl[y] a prison case" and that "[i]t is this type of heinous crime which demands a prison sentence."

The reasons outlined by the district court are sufficient to justify the sentence imposed. It is clear that the court appropriately considered the nature of the offense, the character of the offender, and the sentencing objectives in pronouncing the sentence. Although there were some

7

mitigating factors present, they were outweighed by the substantial aggravating factors identified by the court. Thus, we hold that Dobbs' sentence was not excessive and therefore not an abuse of discretion.

## IV. CONCLUSION

We affirm the district court's judgment of conviction and the resulting sentence because the district court did not abuse its discretion when it referred to "deter[ring] private vengeance" during the sentencing hearing. We also hold that the sentence was reasonable under any rational view of the facts.

Chief Justice BURDICK, Justices BRODY and BEVAN CONCUR.


MOELLER, J., concurring.

I fully concur with the two primary holdings of the majority. First, the district court did not abuse its discretion in imposing a significant and well-deserved sentence for Dobbs' heinous crime against his young niece. Indeed, the district court provided a thorough and thoughtful justification for its sentence. Second, I agree that the district court's passing reference to "deterring private vengeance" during the sentencing was only made as the court attempted to define the philosophical basis for "punishment" being one of the four factors the trial court is to consider at every sentencing—the other three being protection of society, deterrence, and rehabilitation. *State v. Bailey*, 161 Idaho 887, 895, 392 P.3d 1228, 1236 (2017). There is nothing in the record suggesting that the district court actually used the deterrence of private vengeance as a basis for its sentence.

Nevertheless, I write separately to note my concern for what could reasonably be seen as the majority's tacit approval of deterring private vengeance as a legitimate consideration at sentencing. I believe that in this day and age, the consideration of the victim's subjective desire for vengeance by the trial court is inappropriate and an abuse of discretion.

The majority equates the district court's actual words, "private vengeance," with "private retribution" and then defends the latter term as "part and parcel of the good order of society." However, these terms should not be equated because there is a substantive difference. Although the terms are used synonymously in some dictionaries (as the majority notes), as traditionally used by courts, retribution and vengeance do not have the same meaning or implication. For example, except for the Court of Appeal's reference to "private vengeance" in *State v. Campbell*,

123 Idaho 922, 931, 854 P.2d 265, 274 (Ct. App. 1993), Idaho appellate courts have consistently referenced retribution as a proper consideration at sentencing, without mentioning vengeance. Even in *Gregg v. Georgia*, 428 U.S. 153 (1976), a case cited by the majority wherein the U.S. Supreme Court acknowledged the appropriateness of retribution as a justification for capital punishment, the U.S. Supreme Court did not go so far as to approve the deterrence of private vengeance as a legitimate objective of sentencing. *Id*. at 183-84.

The reluctance of our nation's courts to utilize the deterrence of private vengeance as a factor in sentencing is understandable because vengeance is not grounded in justice. Private vengeance is by definition very personal and focuses on satisfying a victim's emotional need for revenge against the defendant, while retribution focuses on holding the defendant legally accountable and dispassionately redressing his crimes against the victim and society. In a mature democratic society such as ours, one that is firmly rooted in the rule of law, consideration of private vengeance should have no place in our criminal justice system.

As a practical matter, the consideration of private vengeance has proven to be an unreliable basis to justify the severity of a sentence. Experience has shown that not all victims of similar crimes share the same desire for personal vengeance. For example, while some victims may forgo their need for vengeance and ask the court for leniency for the defendant, another victim of an identical crime may not be satisfied even when the defendant receives the maximum possible sentence afforded by law. Is it just for similarly situated defendants to receive disparate sentences solely because one victim asked for mercy and the other demanded vengeance? Of greater concern is that a court's consideration of a victim's subjective desire for personal vengeance may unintentionally open the door to the court determining its sentence based on the unknown motivations of the victim or the victim's family, rather than on the nature of the crime itself. Unfortunately, while such motivations often arise from an understandable emotional response or moral outrage to the crime, they may also be influenced by darker motivations, such as prejudice and bigotry.

A far more reliable basis for meting out a just sentence would be for trial courts to focus on both the societal and criminogenic factors encapsulated within the four objectives of sentencing that have been well-established by this Court: protection of society, deterrence of the individual and the public, the possibility of rehabilitation, and punishment or retribution for wrongdoing. Among these four objectives, protection of society always stands as the paramount

factor. Consideration of these objectives is consistent with the evidence-based sentencing practices we encourage and train our trial judges to follow, while consideration of private vengeance is a highly subjective undertaking that is susceptible to implicit bias. Idaho's Constitution and victim's rights laws provide a substantial and proper framework for protecting the victim's rights, redressing the victim's needs, and permitting the Court to consider the impact of the crime on the victim in fashioning its sentence. *See* Idaho Const. Art. I, § 22; I.C. § 19-5306. In light of this existing legal framework, the Idaho judiciary would be well-advised to leave vengeance to that higher court wherein it has been anciently said that vengeance more properly lies.