**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 48068 / 48069**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, December 2021 Term |
| | ) | |
| v. | ) | Opinion filed: February 4, 2022 |
| | ) | |
| CASEY ROY CASPER, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Samuel A. Hoagland, District Judge.

The judgment of the district court is <u>affirmed</u>.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Jenevieve C. Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen argued.

_____

MOELLER, Justice.

This appeal consists of two consolidated cases concerning drug-related charges. Casey Casper appeals his sentence, arguing it is excessive in light of mitigating factors he claims the district court failed to properly consider. Casper also challenges certain restitution costs awarded to the State, claiming that they are unlawful under a plain interpretation of Idaho Code section 37-2732(k). For the following reasons, we affirm the district court.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On October 5, 2018, law enforcement officers performed a welfare check on an apartment after a concerned neighbor reported unknown individuals in the home of an "elderly" woman. This woman had contacted her neighbor and asked for help, requesting the neighbor contact the police due to two men arguing in her home. Once there, police met the woman and shortly encountered Casper. Casper told police he stayed in the apartment on-and-off to make sure the tenant was well, considering her health and memory problems, and inability to protect herself.

1

The woman consented to a search of her apartment. In the bedroom where Casper had been sleeping, officers found 62.5 grams of methamphetamine in plastic baggies, a glass smoking pipe, a hypodermic needle, a plastic red tube containing crystalline residue inside, and Casper's wallet with his identification cards. The red tube was with Casper's wallet, while the other items were found in various locations throughout the bedroom. Officers arrested Casper on charges of trafficking in methamphetamine, possession of a controlled substance, and possession of drug paraphernalia. Forensics testing later confirmed the crystalline substances in the plastic baggies, as well as the residue of the red plastic tube, all to be methamphetamine.

Although the charges against Casper were originally brought as two separate criminal complaints, they were later consolidated for trial. The consolidated charges also included a persistent violator enhancement pursuant to Idaho Code section 19-2514. Casper's cases first proceeded to trial in July 2019, but resulted in a hung jury and mistrial. A second trial took place in March 2020. This time the trial resulted in a split verdict: the jury found Casper guilty on the possession charges, but not guilty on the trafficking charge. Following these verdicts, Casper pleaded guilty to being a persistent violator. At both trials, the State called the forensic scientist who tested the evidence in Casper's case to testify as an expert witness regarding her laboratory testing procedures, and she confirmed that the controlled substances found in the bedroom were methamphetamine.

At sentencing, the district court considered a range of materials submitted by Casper and the State. Most notably, the presentence investigation report ("PSI") showed that Casper has a significant criminal history, with prior felony convictions dating back to 1994 involving grand theft, various controlled substance charges (primarily related to methamphetamine), and corresponding probation violations. His criminal history included misdemeanor convictions for battery, domestic battery, eluding and obstructing police, carrying a concealed weapon, and resisting arrest. Importantly, Casper was on parole for a prior felony conviction when police arrested him in this case.

In his most recent PSI, Casper described his mental health as "not good," with a history of anxiety and psychosis, as well as disclosing a "history of 'many' homicidal and suicidal ideations and attempts." A court-ordered mental-health evaluation from 2009[1] diagnosed Casper with

---

[1] The record does not disclose why a nine-year-old mental health evaluation was relied on in this case, as opposed to ordering a new one. Regardless, Casper has not raised this as an issue on appeal.

bipolar disorder, obsessive-compulsive disorder, methamphetamine dependence, and antisocial personality disorder. The 2009 evaluation stated: "Without treatment in a structured environment, he will almost certainly relapse/re-offend." The evaluation also noted Casper fell into "a high risk category . . . of violent recidivism." Casper's substance abuse history included abuse of alcohol, methamphetamine, marijuana, cocaine, LSD, and "bath salt" stimulants. He has either participated in or completed several treatment programs over the years. Relapses, however, have been frequent, and Casper has failed to complete some treatment programs.

The district court also noted an alleged crime that occurred after Casper was incarcerated for the subject offenses. In April 2019, following Casper's arrest, he was accused of knocking out and then raping one of his cellmates. Casper denied the incident occurred, and contested its consideration in his sentencing report.

At sentencing, Casper pointed to evidence that he has a supportive mother and family, and wants to seek treatment and rehabilitation for his addictions. Casper asserted that he has struggled for years with mental health and substance addictions, following a childhood plagued by physical and sexual abuse. He also asserted in the PSI that he has had some success in his professions as a carpenter, drywaller, concrete worker, and wildland firefighter, though the court observed that Casper's work history has been unstable. While Casper stressed that he is a father of three grown children, the district court also noted that Casper has "had little or no contact with them and [Casper] estimates he's $10,000 in arrears in child support."

The district court entered a judgment of conviction and sentenced Casper to ten years imprisonment for possession of methamphetamine, with the first three years fixed and the remaining seven years indeterminate. The court also sentenced Casper to an additional 180 days in the Ada County Jail for possession of drug paraphernalia, but ran that sentence concurrently and gave Casper credit for 180 days previously served. Thus, his time for the lesser charge has already been served. The district court concluded that the sentence was appropriate to meet the four objectives of criminal sentencing: protection of society, deterrence of crime, rehabilitation, and punishment or retribution. The court noted that the defendant's lengthy criminal history and multiple opportunities for treatment, as well as a history of mental health issues, violence, dishonesty, and methamphetamine addiction, all played a role in the decision to incarcerate Casper. Of note, the court also concluded that Casper is "a danger to society and not amenable to treatment or probation."

As part of the judgment of conviction, the district court ordered Casper to pay restitution costs under Idaho Code section 37-2732(k). The forensics lab ran five controlled substance analyses at $100 per test for the four baggies and the red tube, with each test identifying methamphetamine residue as the seized controlled substance. In addition to the $500 for this forensic analysis testing, the State requested $276.17 for the cost of its expert witness to testify at both trials concerning the controlled substance reports. The Forensics Lab apportioned the costs of its scientist's hours to provide testimony at trial as follows: $182.87 for the July 2019 trial (4.9 hours at $37.32 per hour) and $93.30 for the March 2020 trial (2.5 hours at $37.32 per hour). In total, these requested investigative costs amounted to $776.17, which the district court ordered Casper to pay in restitution costs to the State.

Casper challenged this amount in the restitution hearing, arguing that the State is not entitled to restitution costs where the first trial did not result in a conviction. Thus, Casper argued that because his first trial resulted in a hung jury, he was only required to pay $93.30 for the costs of the expert testifying at the second trial. The district court found the costs reasonable and appropriate and granted the State's motion, ordering the full amount ($776.17) of restitution claimed.

Following the hearings on sentencing and restitution, Casper filed a motion for reconsideration of his sentence with the district court to request leniency pursuant to Idaho Criminal Rule 35(b). The district court denied this motion. Casper timely appealed his judgment of conviction to this Court.

## II. STANDARD OF REVIEW

Sentencing upon conviction lies within the discretion of the trial court. *State v. Struhs*, 158 Idaho 262, 265, 346 P.3d 279, 282 (2015). Likewise, under Idaho's Uniformed Controlled Substances Act, restitution is a discretionary decision of the trial court. I.C. § 37-2732(k); *State v. Villa-Guzman*, 166 Idaho 382, 384, 458 P.3d 960, 962 (2020). Thus, we review both the challenge to the sentence and restitution for an abuse of discretion.

In such cases, the defendant bears "the burden of showing a clear abuse of that discretion." *See Struhs*, 158 Idaho at 265, 346 P.3d at 282 (citation omitted). When reviewing an appeal for an abuse of discretion, we determine "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by

4

the exercise of reason." *Villa-Guzman*, 166 Idaho at 384, 458 P.3d at 962 (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

However, where this Court addresses issues of statutory interpretation, we exercise free review because it is a question of law. *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015). Statutory interpretation "begins with the statute's plain language" and its objective is "to derive the intent of the legislative body that adopted the act." *Id.* (citation omitted). We must consider the statute as a whole, and give words "their plain, usual, and ordinary meanings." *Id.* When a statute's language is unambiguous, "the legislature's clearly expressed intent must be given effect," and this Court need not venture beyond the plain language to apply additional rules of statutory construction. *Id.*

### III. ANALYSIS

**A. The district court did not abuse its discretion by imposing a ten-year sentence with three years fixed.**

Casper argues that the district court erred because his substance and alcohol abuse issues, gainful employment, and family support were all mitigating factors that supported a more lenient sentence. The State contends that the sentence was within statutory parameters and supported by substantial factual findings. We agree with the State, and affirm the judgment of conviction and resulting sentence.

If a sentence falls within the statutory limits, it is well established that "an appellant has the burden of showing a clear abuse of discretion on the part of the court imposing the sentence." *State v. Pierce*, 150 Idaho 1, 5, 244 P.3d 145, 149 (2010) (citation omitted). The standards governing this review are embodied in this Court's jurisprudence. "A sentence is reasonable if it appears necessary to achieve the objectives of criminal punishment." *State v. Dobbs*, 166 Idaho 202, 204, 457 P.3d 854, 856 (2020). Whereas, an excessive sentence is "unreasonable under any rational view of the facts." *Id.* (quoting *State v. Hansen*, 138 Idaho 791, 797, 69 P.3d 1052, 1058 (2003)). The objectives of criminal punishment have been identified as "(1) protection of society, (2) deterrence of the individual and the public generally, (3) possibility of rehabilitation, and (4) punishment or retribution for wrongdoing." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Among these objectives, we have long held that "[t]he primary consideration is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end." *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956). "The district court has the discretion to weigh [these sentencing] objectives and give them

differing weights when deciding upon the sentence." *State v. Bailey*, 161 Idaho 887, 895, 392 P.3d 1228, 1236 (2017).

Here, in addition to the misdemeanor paraphernalia charge, Casper was sentenced for felony possession of a controlled substance with an additional persistent violator enhancement. Idaho Code section 37-2732(c) provides for a maximum sentence of seven years for possession of a controlled substance and Idaho Code section 19-2514 provides for a minimum five-year sentence, with up to a maximum life sentence, for a persistent violator enhancement. All combined, the ten-year sentence rendered in this case, with the first three years fixed, was well within these statutory parameters. Casper does not challenge any of the district court's findings or its reasoning articulated at sentencing. Rather, he points this Court to his family support, employment, and history of mental health issues and substance addiction and asks for leniency so he can receive treatment while out of custody. Each of these factors, however, was considered by the district court in its sentencing determination. We cannot conclude from the record that the district court abused its discretion in weighing these factors and reaching the decision it did.

The district court noted that while Casper is a father of three children, he has "had little or no contact with them" and has failed to provide child support for years, accruing an estimated $10,000 in arrearages. His work history was equally unstable. While Casper's mother and aunt supported his statements expressing hope for change and rehabilitation, Casper's criminal history told a consistent story of violent behavior and relapses, even when given access to treatment. While he has completed some treatment programs, he has also been terminated from several for noncompliance. When he relapses, he has repeatedly returned to methamphetamine, even while on parole or probation. Casper recognizes he spends time around "the 'wrong' people"; yet, he continually associates with such people upon release from custody. In addition, Casper's criminal history is not simply repeat drug offenses—his criminal activity consists of violent and deceitful offenses.

The district court summarized its findings as follows: Casper was neither fully credible to the court, nor did he demonstrate that he deserves further leniency. Overall the court characterized Casper as "a thief, a liar, a methamphetamine addict, who's violent, sociopathic, a danger to society and not amenable to treatment or probation." On denying Casper's motion for reconsideration of his sentence, the district court reiterated:

6

Defendant has a lengthy criminal record and numerous prior felony convictions. He was on parole and absconded from supervision at the time of the instant offense. He has already been given the opportunity for a rider, probation and parole, and has had multiple opportunities to participate in treatment programs.

Defendant's motion does not allege that the sentence imposed was illegal, or that it was imposed in an illegal manner; rather, Defendant's Motion is a request for leniency. This Court concludes that the sentence previously imposed remains entirely appropriate and necessary to accomplish the objectives of sentencing as articulated in *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App. 1982): punishment, rehabilitation, deterrence, and most importantly, the protection of society.

In light of all the facts, and recognizing that Casper's ten-year sentence falls squarely within the statutory parameters, the district court's sentence was well within the bounds of its discretion. Simply put, we cannot conclude that his sentence was "unreasonable under any rational view of the facts." *Struhs*, 158 Idaho at 267–68, 346 P.3d at 284–85.

**B. The district court's restitution award was not an abuse of discretion.**

Casper next argues that the district court failed to apply the correct legal standards when it awarded restitution to the State because the plain language of Idaho Code section 37-2732(k) limits restitution to charges resulting in a conviction. Thus, Casper argues, the district court erred in ordering him to pay for the investigative costs related to the mistrial and the trafficking charge for which he was later acquitted. In response, the State argues that the statute plainly permits full restitution because Casper had two qualifying convictions: possession of methamphetamine and possession of drug paraphernalia. The State asserts that the costs here are not the product of multiple investigations; rather, the controlled substance testing and the forensic scientist's expert testimony were part of a single investigation that resulted in two convictions, despite an earlier mistrial and an acquittal on the trafficking charge. Neither side argues that the statute is ambiguous. We agree with the State that the plain language of the statute permits the State to recover Casper's restitution costs.

Idaho Code section 37-2732(k) falls under Idaho's Uniformed Controlled Substances Act, and, "[u]pon conviction," permits restitution of "costs incurred by law enforcement agencies in investigating the violation." It states:

Upon conviction of a felony or misdemeanor violation under this chapter . . . the court may order restitution for costs incurred by law enforcement agencies in investigating the violation. Law enforcement agencies shall include, but not be limited to, the Idaho state police, county and city law enforcement agencies, the office of the attorney general and county and city prosecuting attorney offices.

7

*Costs shall include, but not be limited to, those incurred for the purchase of evidence, travel and per diem for law enforcement officers and witnesses throughout the course of the investigation, hearings and trials, and any other investigative or prosecution expenses actually incurred, including regular salaries of employees.* . . . A conviction for the purposes of this section means that the person has pled guilty or has been found guilty, notwithstanding the form of the judgment(s) or withheld judgment(s).

I.C. § 37-2732(k) (emphasis added). Restitution under this statute is discretionary and the amount of restitution is a question of fact for the trial court. *State v. Cunningham*, 161 Idaho 698, 700, 390 P.3d 424, 426 (2017). Accordingly, a restitution award "must be based on a preponderance of the evidence, and . . . will not be disturbed if supported by substantial evidence." *Id.* at 701, 390 P.3d at 427.

Although Casper is generally correct in asserting that a plain reading of this statute requires restitution costs to be awarded "upon conviction," the statute also considers broad circumstances of investigative and prosecutorial costs, including circumstances when there are multiple "trials." *See* I.C. § 37-2732(k). As noted, Idaho Code section 37-2732(k) defines "costs" as "those incurred for the purchase of evidence, travel and per diem for law enforcement officers and witnesses throughout the course of the investigation, *hearings and trials*, and any other investigative or prosecution expenses actually incurred, including regular salaries of employees." (Emphasis added). Importantly, the statute references *trials* in the plural. Considering that some criminal prosecutions may necessitate more than one trial, the plain language of the statute can be read to include certain mistrial scenarios.

This interpretation is supported by an examination of two prior cases where this Court has addressed restitution costs sought by the State that did not result in a conviction. First, in *State v. Nelson*, this Court overturned a restitution order for a lack of substantial evidence where the amount of costs was founded on unsworn representations. 161 Idaho 692, 697, 390 P.3d 418, 423 (2017). Nelson's "first trial ended in a mistrial after the State presented evidence the district court had ordered inadmissible." *Id.* at 694, 390 P.3d at 420. In her second trial, both Nelson and her husband were "convicted of the drug-related charges but acquitted of the injury to child charges." *Id.* On appeal, this Court found several problems with the State's submitted Statement of Costs, including its failure to specify which investigative and prosecution expenses led to Nelson's only conviction, as opposed to the expenses related to the charges that resulted in her mistrial, acquittal, or her husband's conviction as a co-defendant. *Id.* at 696, 390 P.3d at 422. This, in part, led the

8

Court to conclude the restitution order was not supported by the evidence. *Id.* at 697, 390 P.3d at 423.

Second, in *State v. Villa-Guzman*, the defendant challenged her restitution order for a failure to apportion costs, arguing restitution could only be awarded for time spent on charges for which she was actually convicted. 166 Idaho at 383, 458 P.3d at 961. In that case, the defendant was acquitted of trafficking and possession charges, and found guilty only of the lesser-included offense of being present where there are controlled substances. *Id.* at 383-84, 458 P.3d at 961–62. On appeal, this Court determined that Villa-Guzman only challenged the State's restitution request for failing to separate the costs of her investigation and prosecution between the charges that resulted in her acquittal and the actual lesser-included offense for which she was convicted. *Id.* at 385-86, 458 P.3d at 963–64. This Court concluded that such a course was "untenable" in a case like hers. *Id.* at 386, 458 P.3d at 964. Apportioning the costs so finely—where there was only one investigation and one trial—was unreasonable because "the time spent was part of all the charges." *Id.* Likewise, the evidence obtained was "the basis of all the charges." *Id.* Accordingly, the Court concluded: "While apportionment of costs may be warranted in some cases, it was not an abuse of discretion here for the district court to determine that all the costs claimed fell within the purview of the restitution statute." *Id.*

Clearly, neither *Nelson* nor *Villa-Guzman* created a blanket rule barring the recovery of restitution costs for expenses incurred in a trial resulting in a mistrial or a partial acquittal. Each of these cases dealt with unique and specific circumstances. *Nelson*, in particular, dealt with restitution costs following an initial mistrial where the State was at fault because it presented evidence to the jury the district court had already deemed inadmissible. The Court noted the State's lack of a sworn statement of costs and its failure to attest that the costs it was seeking to recover were "actually incurred in prosecuting the charge resulting in Nelson's conviction," and not the charges resulting in a mistrial in the first trial or an acquittal in the second. 161 Idaho at 694, 390 P.3d at 420. *Villa-Guzman* dealt with a narrow basis where the defendant's costs could not be unraveled from her acquitted charges. In each, our longstanding rule is clear: restitution costs are discretionary and defined within the bounds of Idaho Code section 37-2732(k). Thus, in the case of a hung jury, the decision of whether the costs of prosecuting multiple "trials" should be included in a restitution award to the State lies firmly within the discretion of the trial court. *See* I.C. § 37-2732(k).

9

We conclude that because all mistrials are not the same, a blanket rule would not be appropriate. For example, in a case where a mistrial was declared due to some error or misconduct caused by the defense, it would be unjust to reward the defendant and punish the State by not allowing the recovery of restitution for expert witness fees and expenses, in the event a conviction is obtained in a subsequent trial. On the other hand, when a mistrial is necessitated due to an error committed by the State, as in *Nelson*, it would be an abuse of discretion to award the State its restitution costs from the first trial if the defendant is later convicted. Occasionally, mistrials are even declared due to errors made, and later recognized, by the trial court itself. In the case of a hung jury, it cannot be properly said that the defendant was either "acquitted" or "convicted." However, the circumstances of the hung jury, if known by the trial court, may have bearing on the justness of allowing restitution. In sum, these are the type of highly fact sensitive decisions the legislature vested in the trial court, which by nature of its role in presiding over the trial would be in the best position to make. Because the trial court is most intimately aware of how the proceedings were conducted—and the events that may have precipitated the mistrial—it is fitting and proper that the trial court be entrusted with the discretion to determine whether restitution is appropriate.

Here, restitution costs from Casper's mistrial were permissible under a plain reading of Idaho Code section 37-2732(k). We can only speculate as to the reasons why Casper's first trial resulted in a hung jury—and we decline to do so. The district court determined that an award of restitution was proper based on substantial evidence and in accordance with Idaho law, recognizing that Casper's mistrial was simply part of the prosecutorial process covered by section 37-2732(k). In other words, it was only by the State's avoidance of an acquittal in the first trial that the second trial was even possible. Additionally, as in *Villa-Guzman*, Casper's restitution costs were all part-and-parcel of the overall investigation. The methamphetamine testing was not meant to prove only the trafficking charge or the possession charge—it was used as evidence by the State to prove both. Indeed, the forensics testing of the bagged substances and red-tube residue was reasonable and essential to establish at trial whether the controlled substance seized was methamphetamine. Likewise, the expert's testimony describing her testing procedures and reporting her findings applied to both underlying charges. This was an essential part of the State's case and a required element of both crimes—it was the only way to establish the nature of the controlled substances seized. As we held in *Villa-Guzman*, it is simply untenable to apportion these investigative costs

to isolated charges when they apply equally to all. 166 Idaho at 386, 458 P.3d at 964. Just as the forensic evidence and facts obtained during the course of the investigation were "the basis of all the charges," the prosecution costs incurred by the State in presenting that evidence to the jury were based on time spent on all the charges. *See id*.

Accordingly, we affirm the district court's award of restitution costs within the judgment of conviction. The district court did not abuse its discretion in awarding the full amounts of the State's requested investigation and prosecution costs.

### IV. CONCLUSION

For the foregoing reasons we affirm the judgment of conviction, with its resulting sentence and order of restitution.

Chief Justice BEVAN, and Justices BRODY, STEGNER and ZAHN **CONCUR.**